SUN SHIP, INC. *v.* PENNSYLVANIA ET AL.

No. 79–343.  Argued April 14, 1980—Decided June 23, 1980

BRENNAN, J., delivered the opinion for a unanimous Court.

*Jeffery C. Hayes* argued the cause for appellant. With him on the briefs was *Thomas E. Zemaitis.*

*Joseph Lurie* argued the cause and filed a brief for appellees.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The single question presented by these consolidated cases is whether a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), as amended in 1972. 33 U. S. C. §§ 901–950. We hold that it may.

I

The individual appellees are five employees of appellant Sun Ship, Inc., a shipbuilding and ship repair enterprise located on the Delaware River, a navigable water of the United States in Pennsylvania. Each employee was injured after the effective date of the 1972 amendments to the LHWCA while involved in shipbuilding or ship repair activities. Although the LHWCA applied to the injuries sustained, each appellee filed claims for benefits under the Pennsylvania Workmen's Compensation Act with state authorities. Appellant contended that the federal compensation statute was the employees' exclusive remedy. In upholding awards to

---

*Briefs of *amici curiae* urging affirmance were filed by *Solicitor General McCree, Deputy Solicitor General Geller, Laurie M. Streeter,* and *Joshua T. Gillelan II* for the United States; and by *Patrick N. McTeague* for Local No. 6, Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO.

each appellee,[1] the Pennsylvania Workmen's Compensation Appeal Board ruled that the LHWCA did not pre-empt state compensation laws. The Commonwealth Court affirmed, and the Supreme Court of Pennsylvania denied petitions for allowance of appeal. We noted probable jurisdiction, 444 U. S. 1011 (1980), and affirm.

## II

The evolution of the law of compensation for workers injured in maritime precincts is familiar. In 1917, *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, declared that States were constitutionally barred from applying their compensation systems to maritime injuries, and thus interfering with the overriding federal policy of a uniform maritime law. Subsequent decisions invalidated congressional efforts to delegate compensatory authority to the States within this national maritime sphere. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149 (1920); *Washington* v. *W. C. Dawson & Co.,* 264 U. S. 219 (1924). At the same time, the Court began to narrow the *Jensen* doctrine by identifying circumstances in which the subject of litigation might be maritime yet "local in character," and thus amenable to relief under state law. *Western Fuel Co.* v. *Garcia,* 257 U. S. 233 (1921); *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469 (1922). And, in 1927, Congress was finally successful in extending a measure of protection to marine workers excluded by *Jensen* by enacting a federal compensation law—the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 901 *et seq.* That statute provided, in pertinent part, that "[c]ompensation shall be payable [for an injury] . . . occurring upon the navigable waters of the United States . . . if recovery . . .

---

[1] Initially referees heard each of the claims. Four referees granted compensation, rejecting appellant's pre-emption argument. The referee in appellee Fields' case determined that a compensable injury had been inflicted, but agreed with appellant's jurisdictional contention, and dismissed the case.

through workmen's compensation proceedings may not validly be provided by State law." 44 Stat. 1426.

Federal and state law were thus linked together to provide theoretically complete coverage for maritime laborers. But the boundary at which state remedies gave way to federal remedies was far from obvious in individual cases. As a result, the injured worker was compelled to make a jurisdictional guess before filing a claim; the price of error was unnecessary expense and possible foreclosure from the proper forum by statute of limitations. *Davis* v. *Department of Labor,* 317 U. S. 249, 254 (1942). After a decade and a half during which there had not been formulated "any guiding, definite rule to determine the extent of state power in advance of litigation," *id.,* at 253, the Court determined that the border between federal and state compensation schemes was less a line than a "twilight zone," in which "employees must have their rights determined case by case . . . ," *id.,* at 256. Within this zone, *Davis* effectively established a regime of concurrent jurisdiction.

*Calbeck* v. *Travelers Insurance Co.,* 370 U. S. 114 (1962), further overlapped federal and state-law coverage for marine workers. *Calbeck* held that the LHWCA comprehended "all injuries sustained by employees on navigable waters," *id.,* at 124, without regard to whether the locus of an event was "maritime but local," and hence within the scope of state compensation provisions. We interpreted the statutory phrase "if recovery . . . may not validly be provided by State law" to mean that the LHWCA would

> "reac[h] all those cases of injury to employees on navigable waters as to which *Jensen, Knickerbocker* and *Dawson* had rendered questionable the availability of a state compensation remedy . . . [,] whether or not a particular one was also within the constitutional reach of a state workmen's compensation law." *Id.,* at 126–127.

Yet having extended the LHWCA into the "maritime but local" zone, *Calbeck* did not overturn *Davis* by treating the

federal statute as exclusive. To the contrary, *Calbeck* relied upon *Davis,* and discussed at length its proposition that an injury within the "maritime but local" sphere might be compensated under either state or federal law. 370 U. S., at 128–129. So, too, *Calbeck*'s explanation of *Avondale Marine Ways, Inc.* v. *Henderson,* 346 U. S. 366 (1953), indicated that although an injury might be compensable under the Longshoremen's Act, "there is little doubt that a state compensation act could validly have been applied to it." 370 U. S., at 129. Even more significantly, *Calbeck*'s ruling that one of the employees in a consolidated case should not be held to have elected to pursue state remedies was necessarily premised upon the view that state relief was concurrently available. *Id.,* at 131–132; see also *Nacirema Co.* v. *Johnson,* 396 U. S. 212, 220–221 (1969); *Nations* v. *Morris,* 483 F. 2d 577 (CA5 1973) (Brown, C. J.).

Before 1972, then, marine-related injuries fell within one of three jurisdictional spheres as they moved landward. At the furthest extreme, *Jensen* commanded that nonlocal maritime injuries fall under the LHWCA. "Maritime but local" injuries "upon the navigable waters of the United States," 33 U. S. C. § 903 (a), could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—albeit within the range of federal admiralty jurisdiction—were remediable only under state law. *Nacirema Co.* v. *Johnson, supra.*

### III

In 1972, Congress superseded *Nacirema Co.* v. *Johnson* by extending the LHWCA landward beyond the shoreline of the navigable waters of the United States. Pub. L. 92–576, 86 Stat. 1251, amending 33 U. S. C. § 903 (a). In so doing, the Longshoremen's Act became, for the first time, a source of relief for injuries which had always been viewed as the province of state compensation law.

Absent any contradicting signal from Congress, the principles of *Davis* v. *Department of Labor, supra,* and of *Calbeck*

v. *Travelers Insurance Co., supra,* direct the conclusion that the 1972 extension of federal jurisdiction supplements, rather than supplants, state compensation law. Given that the pre-1972 Longshoremen's Act ran concurrently with state remedies in the "maritime but local" zone, it follows that the post-1972 expansion of the Act landward would be concurrent as well. For state regulation of worker injuries is even more clearly appropriate ashore than it is upon navigable waters. Compare *State Industrial Comm'n* v. *Nordenholt Corp.,* 259 U. S. 263 (1922), with *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205 (1917). Furthermore, the "jurisdictional dilemma," *Davis, supra,* at 255, that results when employees must claim relief under one of two exclusive compensation schemes is as acute when the jurisdictional boundary between schemes is fixed upon land, as it is when the line is drawn between two maritime spheres. To read the 1972 amendments as compelling laborers to seek relief under two mutually exclusive remedial systems would lead to the prejudicial consequences which we described in *Davis* as

> "defeat[ing] the purpose of the federal act, which seeks to give 'to these hardworking men, engaged in a somewhat hazardous employment, the justice involved in the modern principle of compensation,' and the state Acts . . . which ai[m] at 'sure and certain relief for workmen.'" 317 U. S., at 254.

See *Calbeck, supra,* at 126.

The language of the 1972 amendments cannot fairly be understood as pre-empting state workers' remedies from the field of the LHWCA, and thereby resurrecting the jurisdictional monstrosity that existed before the clarifying opinions in *Davis* and *Calbeck.* Appellant focuses our attention upon the deletion from amended § 903 (a) of the phrase: "[i]f recovery . . . through workmen's compensation proceedings may not validly be provided by State law." But, if anything, that change reinforces our previous interpretation of that sec-

tion as contemplating concurrent jurisdiction. *Calbeck,* 370 U. S., at 126. For it was that reference to state law which provided the strongest (although ultimately unsuccessful) argument for reading the pre-1972 § 903 (a) as an exclusive jurisdictional provision. *Calbeck, supra,* at 132 (STEWART, J., dissenting). Whether Congress accepted *Calbeck's* view that the state-law clause was *consonant* with concurrent jurisdiction, or the dissenters' construction of the clause as *inconsistent* with concurrent jurisdiction, the deletion of that language in 1972—if it indicates anything—may logically only imply acquiescence in *Calbeck's* conclusion that the LHWCA operates within the same ambit as state workers' remedies.[2] It would be a *tour de force* of statutory misinterpretation to treat the *removal* of phrasing that arguably establishes exclusive jurisdiction as manifesting the intent to command such exclusivity.

Nor does the legislative history suggest a congressional decision to exclude state laws from the terrain newly occupied by the post-1972 Longshoremen's Act. Appellant can draw little support from general expressions of intent to alleviate unjust disparities in recovery conditioned upon the location of marine laborers at the time of an accident; as Part IV, *infra,* demonstrates, concurrency of jurisdiction in no way undercuts that commendable policy. And appellant is not much assisted by fixing upon the sentence in the bill Reports that declares:

> "It is apparent that if the Federal benefit structure embodied in Committee bill is enacted, there would be a

---

[2] If Congress joined in *Calbeck's* understanding that the phrase underscored the LHWCA's application where state-law compensability had been drawn into question by *Jensen,* then the striking of the language may be explained on the ground of its superfluity once Congress had pushed the federal Act landward beyond the *Jensen* line. If the Court took the dissenters' position that the state-law clause imposed jurisdictional exclusivity, then its deletion indicates repeal of any such exclusivity. Finally, Congress may simply have endeavored to reaffirm the correctness of the *Calbeck* result by removing possibly contradictory language.

substantial disparity in benefits payable to a permanently disabled longshoreman, depending on which side of the water's edge the accident occurred, *if State laws are permitted to continue to apply to injuries occurring on land."* S. Rep. No. 92–1125, p. 13 (1972); H. R. Rep. No. 92–1441, p. 10 (1972) (emphasis added).

That statement likely means only that state laws should not be permitted to apply *exclusively* to injuries occurring upon land; the "substantial disparity in benefits" that troubled Congress is eliminated once federal law provides a concurrent or supplementary route to compensation. And, in any event, as Professors Gilmore and Black have noted, "the statement does not appear to be entitled to much weight," since the "part of the Committee Report which is devoted to the shoreward extension of LH[W]CA coverage does not so much as mention the pre-1972 case law on 'maritime but local' and the 'twilight zone.' . . ." G. Gilmore & C. Black, The Law of Admiralty 425 (2d ed. 1975) (hereafter Gilmore & Black).[3] In particular, there is no intimation of intent to overrule *Davis* and *Calbeck*—a significant omission in light of the care which the Reports elsewhere take in identifying the Supreme Court cases to be overturned by the abolition of longshoremen's actions for unseaworthiness. See S. Rep. No. 92–1125, *supra,* at 8–12; H. R. Rep. No. 92–1441, *supra,* at 4–8; Gilmore & Black 425.

We therefore find no sign in the 1972 amendments to the LHWCA that Congress wished to alter the accepted understanding that federal jurisdiction would coexist with state compensation laws in that field in which the latter may constitutionally operate under the *Jensen* doctrine.[4]

---

[3] "It may be that the writer of the Report mistakenly assumed that the LH[W]CA had always provided the exclusive compensation remedy for injuries which occurred on navigable waters and consequently assumed that it would also be exclusive with respect to the land injuries newly covered by the amendments." Gilmore & Black 425.

[4] Appellant also argues that a mandate for exclusive jurisdiction may be

## IV

Appellant vigorously contends, nevertheless, that jurisdictional exclusivity is—in "fact" or in "law"—implied in the LHWCA. Pointing to declarations of congressional policy to eliminate disparities in compensation to marine workers depending on whether they were injured on land or over water, S. Rep. No. 92–1125, *supra,* at 12–13; H. R. Rep. No. 92–1441, *supra,* at 10–11, appellant urges that concurrent remedial jurisdiction on land would defeat the uniformity principle underlying the statute.

As the Reports make clear, the disparities which Congress had in view in amending the LHWCA lay primarily in the paucity of relief under *state* compensation laws.[5] The thrust of the amendments was to "upgrade the benefits." S. Rep. No. 92–1125, *supra,* at 1; see *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S. 249, 261–262 (1977). Concurrent jurisdiction for state and federal compensation laws is in no way inconsistent with this policy of raising awards to a federal

discerned in 33 U. S. C. § 905 (a), which provides in pertinent part that "[t]he liability of an employer . . . shall be exclusive and in place of all other liability of such employer to the employee. . . ." Since that provision predates the 1972 amendments, however, appellant's interpretation would also discredit our previous decisions in *Davis* v. *Department of Labor,* 317 U. S. 249 (1942), and *Calbeck* v. *Travelers Insurance Co.,* 370 U. S. 114 (1962). In fact, *Calbeck* upheld an award under the LHWCA against which had been credited payments made under the aegis of a state compensation statute; we noted that 33 U. S. C. § 905 was "not involved in this case," 370 U. S., at 132, n. 16. Thus, we did not construe § 905 (a) to exclude remedies offered by other jurisdictions. See Gilmore & Black 432–433, and n. 335d; cf. *Industrial Comm'n* v. *McCartin,* 330 U. S. 622 (1947). The 1972 amendments signify no rejection of this interpretation.

[5] "To make matters worse, most State Workmen's Compensation laws provide benefits which are inadequate; even the better State laws generally come nowhere close to meeting the National Commission on State Workmen's Compensation Laws recommended standard of a maximum limit on benefits. . . ." S. Rep. No. 92–1125, p. 12 (1972); H. R. Rep. No. 92–1441, p. 10 (1972).

minimum. When laborers file claims under the LHWCA, they are compensated under federal standards. And workers who commence their actions under state law will generally be able to make up the difference between state and federal benefit levels by seeking relief under the Longshoremen's Act, if the latter applies.[6]

To be sure, if state remedial schemes are more generous than federal law, concurrent jurisdiction could result in more favorable awards for workers' injuries than under an exclusively federal compensation system.[7] But we find no evidence that Congress was concerned about a disparity between adequate federal benefits and *superior* state benefits. Rather, it seems that the *quid pro quo* to the employers for the landward extension of the LHWCA by the 1972 amendments was simply abolition of the longshoremen's unseaworthiness remedy. See S. Rep. No. 92–1125, *supra*, at 4–5; H. R. Rep. No. 92–1441, *supra*, at 1; *Northeast Marine Terminal Co.* v. *Caputo, supra*, at 261–262. Indeed, it is noteworthy that in their discussion of advantages to employers under the 1972 amendments, the bill Reports dwell upon the rejection of the

---

[6] Most often, state workmen's compensation laws will not be treated as making awards thereunder final or conclusive. See *Calbeck* v. *Travelers Insurance Co., supra*, at 131–132; *Industrial Comm'n* v. *McCartin, supra;* Gilmore & Black 431–433; 4 A. Larson, Law of Workmen's Compensation §§ 85.20, 89.53 (a) and (b) (1979); Larson, The Conflict of Laws Problem Between the Longshoremen's Act and State Workmen's Compensation Acts, 45 S. Cal. L. Rev. 699, 729–730 (1972). Admittedly, if a particular state compensation law provision does indisputably declare its awards final, a conflict with the LHWCA may possibly arise where a claimant seeks inferior state benefits in the first instance. But the consequences to the claimant of this error would be less drastic than those of a mistake under the rule appellant contemplates—under which a misstep could result in no benefits. At any rate, although the question is not directly before us, we observe that if federal preclusion ever need be implied to cope with this remote contingency, a less disruptive approach would be to pre-empt the state compensation exclusivity clause, rather than to pre-empt the entire state compensation statute as appellant suggests.

[7] But this situation will be exceedingly rare. See 4 A. Larson, Law of Workmen's Compensation, *supra*, § 89.27, at 16–180.

unseaworthiness action, and do not mention pre-emption of state remedies. See S. Rep. No. 92–1125, *supra,* at 4–5; H. R. Rep. No. 92–1441, *supra,* at 1.

Finally, we are not persuaded that the bare fact that the federal and state compensation systems are different gives rise to a conflict that, from the employer's standpoint, necessitates exclusivity for each compensation system within a separate sphere. Mandating exclusive jurisdiction will not relieve employers of their distinct obligations under state and federal compensation law. The line that circumscribes the jurisdictional compass of the LHWCA—a compound of "status" and "situs"—is no less vague than its counterpart in the pre-"twilight zone" *Jensen* era. See generally *P. C. Pfeiffer Co.* v. *Ford,* 444 U. S. 69 (1980); *Northeast Marine Terminal Co.* v. *Caputo, supra;* Gilmore & Black 424, 428–430; 4 A. Larson, Law of Workmen's Compensation § 89.70, p. 16–283 (1979). Thus, even were the LHWCA exclusive within its field, many employers would be compelled to abide by state-imposed responsibilities lest a claim fall beyond the scope of the LHWCA.[8] Our observation about exclusive jurisdiction in *Davis* v. *Department of Labor* is apt whether jurisdictional barriers are erected on land or at the water's edge: "The horns of the jurisdictional dilemma press as sharply on employers as on employees." 317 U. S., at 255.

Of one thing we may be certain. The exclusivity rule which appellant urges upon us would thrust employees into the same jurisdictional peril from which they were rescued by *Davis* and *Calbeck* v. *Travelers Insurance Co.* See Gilmore & Black 425.[9] The legislative policy animating the LHWCA's land-

---

[8] See also Larson, 45 S. Cal. L. Rev., *supra,* at 736–737.

Of course, there is no danger of double recovery under concurrent jurisdiction since employers' awards under one compensation scheme would be credited against any recovery under the second scheme. See, *e. g., Calbeck* v. *Travelers Insurance Co., supra,* at 131.

[9] "Indeed a theory of concurrent jurisdiction . . . seems to be the only sensible way of dealing with state and federal statutes which meet at some vaguely defined line." Gilmore & Black 425.

ward shift was remedial; the amendments' framers acted out of solicitude for the workers. See *P. C. Pfeiffer Co., supra,* at 74–75; *Northeast Marine Terminal Co.,* 432 U. S., at 268. To adopt appellant's position, then, would blunt the thrust of the 1972 amendments, and frustrate Congress' intent to aid injured maritime laborers. We decline to do so in the name of "uniformity."

Accordingly, we affirm.

*It is so ordered.*