652 F.2d 255
 Raymond CHURCHILL, Petitioner,
v.
PERINI NORTH RIVER ASSOCIATES and Hartford Accident &
Indemnity Company, Respondents,
and
Benefits Review Board, U. S. Department of Labor, Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondent.
 No. 1429, Docket 80-4250.
 United States Court of Appeals,
Second Circuit.
 Argued June 2, 1981.
Decided June 17, 1981.
 
 David MacRae Wagner, New City, N. Y. (Freedman, Wray, Wagner, Tabakman & Weiss, New City, N. Y., of counsel), for petitioner.
 Mark C. Walters, U. S. Dept. of Labor, Washington, D. C. (T. Timothy Ryan, Jr., Sol. of Labor, Cornelius S. Donoghue, Jr., Acting Associate Sol. of Labor, Washington, D. C., of counsel), for respondent Director of Compensation.
 Martin Krutzel, New York City (Fischer Brothers, New York City, William F. Fischer, Jr., New York City, of counsel, Richard A. Cooper, New York City, on brief), for respondents Perini Associates and Hartford Accident & Indemnity Co.
 Before MESKILL and KEARSE, Circuit Judges, and LASKER, District Judge.*
 PER CURIAM:
 
 
 1
 This case presents a clear, if not easy, issue: was the claimant engaged in "maritime employment" within the "status requirement" of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 902(3) (LHWCA).[1] The answer to this question depends on whether Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), has implicitly reversed the decision of this Court in Fusco v. Perini North River Associates, 622 F.2d 1111 (2d Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981) (Fusco II ). Because we believe that Sun Ship, Inc. has not undermined Fusco II, we deny the petition for review and uphold the decision of the Benefits Review Board (Board).
 
 I.
 
 2
 This claim arose as a result of an injury occurring in the course of the construction of the North River Pollution Control Project, a massive undertaking described at length in Fusco v. Perini North River Associates, 601 F.2d 659, 661-62 (2d Cir. 1979), vacated and remanded, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980) (Fusco I ). Petitioner Raymond Churchill is a dock-builder foreman and has been a member of the dockbuilders' union for more than 20 years. At the time of the accident, Churchill was responsible for the work performed on one of the "crane barges" which carried the huge "caissons"[2] to the construction site. On October 9, 1974, Churchill was injured when, in the course of supervising the unloading of a caisson, a line snapped against his leg, pitching him into the air.
 
 
 3
 On December 4, 1978, Administrative Law Judge Julius Johnson denied Churchill's claim for compensation under the LHWCA, ruling that "claimant's employment was not maritime in (the) traditional sense, but was customary construction work.... Mere construction over navigable water ... does not magically convert his work ... into maritime employment." (A. 106). On October 31, 1980, the Board affirmed, with one judge dissenting.[3] The majority held that Churchill failed to satisfy the status requirement of § 902(3), ruling that mere proximity to navigable water is not sufficient to convert the work of a construction worker into maritime commerce. Rather, the Board held, the work must have a "realistically significant relationship to maritime activities involving navigation and commerce over navigable waters." (A. 113). Rejecting Churchill's argument that unloading the barge was "indisputably" a longshoring activity, the Board held that Churchill "was a construction worker whose task of unloading the (caisson) was an incidental function to his job of constructing the substructure." (A. 115). Churchill now petitions for review.
 
 II.
 
 4
 Churchill advances in this Court the argument of Appeals Judge Miller in his dissent below: (i) the claim would have been covered under the LHWCA before the 1972 Amendments, see Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), (ii) the 1972 Amendments were not meant to remove pre-existing coverage, and (iii) Sun Ship, Inc. v. Pennsylvania, supra, proves that pre-1972 cases allowing coverage for injuries on navigable waters are still good law. The first two arguments are precisely those made in Fusco I and rejected in Fusco II. The question before us, therefore, is whether Sun Ship, Inc. should cause us to reformulate the standard recently adopted in Fusco II.
 
 
 5
 In Sun Ship, Inc. the Court held that a state "may apply its workers' compensation scheme to land-based injuries that fall within the coverage" of the LHWCA. 447 U.S. at 716, 100 S.Ct. at 2432. After reviewing the events leading up to the enactment of the original version of the Act in 1927, the Court stated that Congress, in expanding shoreward the coverage of the Act, did not intend to diminish the sphere of permissible state compensation coverage in the "twilight zone" of coexistent state and federal jurisdiction. Thus, the Court reaffirmed the "regime of concurrent jurisdiction" established by Davis v. Department of Labor, supra, and Calbeck v. Travelers Insurance Co., supra :
 
 
 6
 Absent any contradicting signal from Congress, the principles of Davis v. Department of Labor, supra, and of Calbeck v. Travelers Insurance Co., supra, direct the conclusion that the 1972 extension of federal jurisdiction supplements, rather than supplants, state compensation law. Given that the pre-1972 Longshoremen's Act ran concurrently with state remedies in the "maritime but local" zone, it follows that the post-1972 expansion of the Act landward would be concurrent as well.
 
 
 7
 Sun Ship, Inc. v. Pennsylvania, supra, 447 U.S. at 719-20, 100 S.Ct. at 2436. The Court therefore held that Pennsylvania could properly apply its state compensation system to injuries occurring in the expanded situs of the LHWCA.
 
 
 8
 Churchill now argues that the reaffirmation of Davis and Calbeck renders unnecessary any application of the "situs and status" test of P. C. Pfeiffer Co. v. Ford, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1980), whenever the injury occurs in the course of employment on navigable waters. In other words, an employee engaged in construction on the water is necessarily engaged in "maritime employment" within the meaning of the Act, and no inquiry into his status is necessary. Thus, Churchill would have us apply the "situs and status" test of Ford where the injury occurs in the expanded contiguous zone described in § 903(a) and a simpler "situs" test where the injury occurs in the course of a job on navigable waters, as it did in Davis and Calbeck.
 
 
 9
 While the question is certainly not free from doubt, we decline to read Sun Ship, Inc.'s reaffirmation of Davis and Calbeck as creating such a dramatic change in the analytical framework set forth in Ford less than a year earlier. Indeed, Justice Brennan, writing for the Court in Sun Ship, Inc., stated that "(t)he line that circumscribes the jurisdiction of the LHWCA" is a "compound of 'status' and 'situs'." 447 U.S. at 725, 100 S.Ct. 2439, 65 L.Ed.2d 458. Sun Ship, Inc. held only that nothing in the 1972 Amendments precludes a state from offering compensation to an employee who is admittedly covered under the expanded situs of the Act. The distinct question of which employees are covered under the Act is controlled by the analysis set forth in P. C. Pfeiffer Co. v. Ford, supra, and applied by this Court in Fusco II. See also Weyerhauser Co. v. Gilmore, 528 F.2d 957 (9th Cir. 1975), cert. denied, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976). We do not read Sun Ship, Inc. as suggesting that the Ford analysis should not apply to injuries occurring on the water itself. We therefore adhere to our reasoning in Fusco II.
 
 
 10
 We have carefully reviewed the substantive contentions of Churchill and the Solicitor of Labor and have concluded that each argument is foreclosed by the decision of this Court in Fusco II. Since we do not feel that Sun Ship, Inc. has eroded the validity of Fusco II, the petition for review is denied.
 
 
 
 *
 Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Under the LHWCA, a claimant must first satisfy the "status" test by demonstrating that he is an "employee," defined in § 902(3) as
 any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker ....
 The term "maritime employment" is not specifically defined in the Act. The Supreme Court recently stated that the term "refers to the nature of a worker's activities" and is "an occupational rather than a geographic concept." P. C. Pfeiffer Co. v. Ford, 444 U.S. 69, 78, 79, 100 S.Ct. 328, 335, 336, 62 L.Ed.2d 225. In Fusco v. Perini North River Associates, 622 F.2d 1111, 1113 (2d Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981), we read the Ford opinion "as precluding any application of the LHWCA ... to an employee whose activities do not bear a significant relationship to navigation or to commerce on navigable waters."
 Once a claimant has shown that he is an "employee," he must show that his injury occurred within the "situs" defined in § 903(a):
 Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).
 
 
 [2]
 A "caisson" is a huge, hollow circular pipe used for construction in the water. See Fusco v. Perini North River Associates, 601 F.2d 659, 661 (2d Cir. 1979), vacated and remanded, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980)
 
 
 [3]
 Churchill's case was decided with five other consolidated cases, all arising out of the North River Pollution Control Project