Betty **ROY**, Individually and on behalf of her minor son, Dairius Dante **CHARLOT**

v.

**BETHLEHEM STEEL CORPORATION.**

No. 1:92–CV–376.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 1, 1993.

---

Christopher Matthew Parks, Law Offices of Carl A. Parker, Port Arthur, TX, for plaintiff.

Dewey J. Gonsoulin, David B. Gaultney, Mehaffy & Weber, Beaumont, TX, for defendant.

## OPINION

COBB, District Judge.

### I. BACKGROUND

Dairol Mark Charlot, Sr. burned to death in a steel chamber at the bottom of a drilling vessel. Charlot was employed by the defendant Bethlehem Steel Corporation as a boilermaker. The 33–year–old resident of Port Arthur, Texas, worked seven-day-a-week shifts at the Bethlehem Steel shipyard.

On May 16, 1992 Charlot was working aboard the STORM DRILL V drilling vessel. The vessel was berthed approximately twenty feet from shore with its movable legs jacked deep in the mud of the Sabine–Neches Canal. Charlot and his co-worker, Jackie Minnich, were assigned the task of removing a series of plates which divided a chamber inside the legs of the vessel. The working area was a closed circular chamber approximately five feet high and thirty feet in circumference, which surrounded the bottommost portion of the drilling legs. It had an eighteen-inch manhole which was the single access area for entering or exiting.

In order to perform his duties, Charlot needed a hose for his cutting torch. After searching a short while, Minnich asked for one of the new hoses which were stacked in the tool room. The tool room worker refused to give Minnich a brand new hose and instructed him to find his own. Charlot attempted to get a new hose, but was also refused. Charlot and Minnich eventually found some old hoses which were left out on the shipyard by the prior crew. Minnich and Charlot then boarded the STORM DRILL V by walking up a short gangway from the shore. The inside of the chamber was covered with scrap steel and hydraulic fluid. There was no-one to perform a fire watch outside the chamber. There were also no water buckets, fire extinguishers, absorbent sand or any other firefighting equipment. In order to complete the process, both Minnich and Charlot were required to climb into the hold and work side by side. While one cut, the other would watch for flames, molten steel and other hazards and assist the burner. They worked all morning without incident.

Around 2:30 p.m., both men climbed back into the manhole, and Jackie Minnich was cutting. The hose attached to his blow torch ruptured and erupted into six foot flames. Minnich and Charlot crawled to the back of the circular chamber where they were separated by two-inch steel wall. In his deposition, Minnich testified that he counted twenty explosions within the chamber. Because there was no fire watch and no one else in the hole with them, the two men had to wait until the end of their shift before they could receive help. Minnich passed out at 3:15 p.m. At 3:25 p.m., the shift ended and several workers realized Minnich and Charlot were missing. When they boarded the ship, the workers discovered the fire, turned off the gas, and disconnected the hose. Mark Mulliner, an assistant fire marshal of the Port Arthur Fire Department, who responded to the call from Bethlehem, claims the fire burned for an estimated fifty-five minutes, and the temperatures experienced by Charlot and Minnich were between 100 and 500 degrees fahrenheit.

Jackie Minnich survived the fire. Dairol Charlot was asphyxiated by the lack of oxygen and badly burned by the heat and flames. He died in the ambulance on the way to the hospital.

Betty Roy, individually and on behalf of her minor son, Dairius Dante Charlot, filed this suit against Bethlehem Steel, alleging that they are the surviving heirs of Dairol Mark Charlot, Sr. They assert several alternative causes of action claiming that Dairol Charlot was either

i. a seaman eligible for benefits under the Jones Act;

ii. an employee under the Longshoremen and Harbor Workers' Compensation Act (LHWCA), but eligible to sue

on common law claims of intentional tort as an exception to the LHWCA; or

iii. a "twilight zone" employee eligible to sue under the Texas Workers' Compensation Act or to assert state law causes of action for negligence, gross negligence, assault, battery, and "other intentional torts."

Bethlehem has filed a motion for summary judgment, stating that:

i. Betty Roy was not the wife or heir of Charlot as a matter of law, and therefore has no standing to bring this action;

ii. Charlot does not qualify as a seaman as defined by the Jones Act, and therefore is not entitled to relief under the Jones Act; and

iii. the LHWCA is an exclusive remedy which precludes Plaintiffs' suit after receiving benefits under the Act.

For the reasons discussed below, Bethlehem's motion for summary judgment is granted in part, and denied in part.

## II. DISCUSSION

### 1. *Betty Roy's Status*

■ In determining heirship, a federal court is to apply the law of the state in which the decedent was domiciled at the time of his death. Dairol Charlot was domiciled in Jefferson County, Texas. Texas law is therefore applicable.

■ Betty Roy asserts that she was the common law wife of Charlot. She testified in her deposition, however, that she never legally married Charlot. Dairol Mark Charlot Sr. was married to Veronica Lynn Fontenette on June 24, 1978, prior to his alleged common law marriage of Betty Roy. Charlot and Fontenette were never divorced prior to his death. The Texas Family Code states that

A marriage is void if either party was previously married and the prior marriage is not dissolved. However, the marriage becomes valid when the prior marriage is dissolved if, since that time, the parties have lived together as husband and wife,

and represented themselves to others as being married.

Tex.Fam.Code Ann. § 2.22 (Vernon 1975).

There is no evidence that Charlot and Fontenette were ever divorced prior to his death. As such, Betty Roy's claim of common law marriage is void. Since there is no evidence that Betty Roy qualifies as an heir, she has no standing to sue in this case. Her minor son, however, Dairius Dante Charlot, is unaffected. He may continue his suit in the present case.

### 2. *Jones Act*

■ In order to have standing to sue under the Jones Act, the decedent must qualify as a seaman. 46 U.S.C. § 688 (1975). Under the Jones Act, a seaman is an injured maritime worker who was either permanently assigned to or performed a substantial portion of his work aboard a vessel, or fleet of vessels, and his work contributed to the mission of the vessel or fleet. *Campo v. Electro–Coal Transfer Corp.*, 970 F.2d 51, 52 (5th Cir.1992). The key issue here is whether Charlot was permanently assigned to, or did a substantial amount of his work aboard this vessel, or a fleet of vessels.

There is no evidence that he did so. Based on the pleadings, motions, and supporting documents before this court, Charlot was a dock worker who was assigned to ships as they arrived at the Bethlehem shipyard. He was not specifically assigned to the STORM DRILL V, nor to a fleet. The Fifth Circuit held that mechanics who come aboard to repair a ship do not become members of the crew. *Maryland Casualty Co. v. Lawson*, 94 F.2d 190, 192 (5th Cir.1938).

■ Generally, whether a person is a member of a crew of a vessel is a mixed question of fact or law. *Offshore Co. v. Robison*, 266 F.2d 769, 780 (5th Cir.1959). However, when there is no reasonable evidentiary basis for a jury finding that an injured person is a seaman or a member of a crew of a vessel under the Jones Act, summary judgment is appropriate. *Id.* Similarly, under the LHWCA, a longshore worker is defined as any person engaged in maritime employment, including a ship repairman, but the

term does not include a master or member of a crew of any vessel. 33 U.S.C. § 902(3) (1986). Based on the pleadings, motions and supporting documents, this court finds that Charlot was not a seaman, and his heirs have no remedy under the Jones Act as a matter of law.

### 3. *LHWCA*

■ The LHWCA is an exclusive remedy to those entitled to benefits, and bars actions alleging negligence and gross negligence. 33 U.S.C. § 905(a) (1986). The employer can be sued under LHWCA, however, if he committed an intentional tort, i.e., genuine, intentional injury. *Austin v. Johns–Manville Sales Corp.,* 508 F.Supp. 313, 316 (D.Me. 1981); *Houston v. Bechtel Assoc. Professional Corp.,* 522 F.Supp. 1094, 1096 (D.Va.1981).

■ Plaintiffs offered several employees' affidavits indicating that the conditions in the Bethlehem shipyards were so dangerous that the Bethlehem personnel were "substantially certain" injuries or fatalities would occur. They cite the RESTATEMENT (SECOND) § 500, comment f (1965) for the proposition that gross negligence can be raised to an intentional tort when there is more than just a strong possibility that Bethlehem's conduct would cause harm. Plaintiff claims that Bethlehem is an expert in ship repair and construction. It should therefore be held to an expert's standard in work place safety regarding ship repair and construction. As an expert, Plaintiffs claim, it had a duty to exercise an expert's degree of care and safety. Bethlehem's own safety regulations required certain steps to be taken during the hazardous activities at issue, e.g., a watchman should be posted at the entry, firefighting equipment should be provided, etc. Bethlehem did not follow its own policies. Therefore, Plaintiffs argue, it knowingly and intentionally disregarded them, and its gross negligence or recklessness is raised to a level of intent.

Even if *arguendo* Bethlehem's conduct constitutes gross negligence or recklessness, this court cannot extrapolate Bethlehem's actions into intent. Plaintiffs have not provided evidence that Bethlehem intentionally injured or killed Charlot. As another court stated:

> [W]illful, wanton, and reckless misconduct is not the equivalent of an intentional tort. There must be proof of a specific intent by the employer to injure the employee.

*Johnson v. Odeco Oil & Gas Co.,* 679 F.Supp. 604, 607 (E.D.La.1987), *aff'd,* 864 F.2d 40 (5th Cir.1989); *see also Austin v. Johns–Manville Sales Co.,* 508 F.Supp. 313 (D.Me. 1981); *Houston v. Bechtel Assoc. Professional Corp.,* 522 F.Supp. 1094 (D.D.C.1981). The characterization of negligence as wanton or gross does not raise that negligence into intent nor does it affect the exclusiveness of the remedies provided by the compensation acts. *See Johnson v. American Mut. Liab. Ins. Co.,* 559 F.2d 382, 386 n. 5 (5th Cir.1977). Plaintiff Dairius Dante Charlot is receiving LHWCA benefits. Because Bethlehem did not intentionally injure or kill his father, Dairius Dante Charlot is bound by the exclusivity of the LHWCA remedies.

### 4. *Texas Workers' Compensation Act*

■ As Plaintiffs correctly point out, there is a "twilight zone" of jurisdiction between the LHWCA and the state workers' compensation schemes. This "twilight zone" comes into play whenever an injury occurs on the borderline between land and navigable waters and allows an injured employee to proceed under either the LHWCA or the Texas Workers' Compensation Act (TWCA). *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 720–22, 100 S.Ct. 2432, 2436–38, 65 L.Ed.2d 458 (1980).

■ As discussed above, the LHWCA generally provides an exclusive remedy against an employer. 33 U.S.C. § 905(a) (1986). Under the TWCA, however, there is an exception which may allow plaintiff to proceed. The TWCA does not prohibit the recovery of exemplary damages by surviving spouses or heirs of the body of a deceased employee if employer committed intentional acts or gross negligence. Tex.Rev.Civ.Stat. Ann. art. 8308–4.01(b) (Supp.1993). Dairius Dante Charlot may qualify for such exemplary damages if a jury finds that Bethlehem's conduct constitutes gross negligence. Whether Bethlehem's conduct does so qualify

is a question of fact. As to Dairius Dante Charlot's Texas Workers' Compensation Act claim for exemplary damages, therefore, summary judgment is denied.

### 5. *Plaintiff's Motion to Compel*

On February 23, 1993, plaintiffs filed, and this court granted, a motion to compel disclosure. The day after the accident, Ron Thweatt, the Industrial Relations Supervisor at Bethlehem Steel's shipyard, took the recorded statements of several witnesses regarding the events causing the death of Dairol Mark Charlot. These statements were transcribed.

■ Plaintiff asked that those statements be disclosed, asserting that these were not covered by any recognized privilege under the Federal Rules of Evidence. This court permitted, and defendant provided, the statements Thweatt received the day after the accident. Plaintiff now files another motion to compel, claiming that the order permits plaintiff to receive *all* of the statements Mr. Thweatt received, even after the day following the accident. This court disagrees. Despite plaintiff's vehement objections that the statements received by Mr. Thweatt are not covered by any recognized privilege, they are covered by the work-product privilege.

This court finds that these statements were made in anticipation of litigation, and are therefore protected. *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985). Plaintiff is therefore not entitled to these statements as a matter of law.

■ Plaintiff also contends that because defendant unilaterally decided that these statements were privileged, and did not adequately disclose the contents of these statements to show that they are privileged, he has waived any privilege that he could reasonably claim. Again, this court disagrees. Plaintiff's own authority states that:

> The party must supply the court with sufficient information from which he could reasonably conclude that the communication: (1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was

related to legal matters; and (4) is at the client's instance permanent protected.

*Federal Trade Comm'n v. Shaffner,* 626 F.2d 32, 37 (7th Cir.1980). The improper assertion of claims of attorney-client privilege with respect to production of documents results in no claim of privilege at all. *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 94 (D.Del.1974).

This court finds that defendant's assertion of an attorney-client privilege was not improper. Defendant in the prior motion supplied this court with information from which Defendant could reasonably conclude that the communication was privileged. The court therefore finds that the statements that Mr. Thweatt collected are in anticipation of litigation, and therefore privileged.

### 6. *Motions for Sanctions*

Defendant also filed a motion for sanctions. This is the third of four lawsuits filed by the plaintiffs against Bethlehem Steel in which they seek to recover damages as a result of the accident. The first lawsuit was filed on May 20, 1992, four days after the accident, in the state district court of Jefferson County, Texas. Plaintiffs' attorney dismissed this lawsuit and filed a second lawsuit against the defendant on May 22, 1992, in the District Court of Jefferson County, Texas. He then filed a motion for nonsuit, and an order was entered on June 11, 1992, granting the motion, and dismissing the lawsuit without prejudice. Subsequently, the plaintiff filed a third lawsuit in the federal district court at Beaumont, Texas. Finally, on February 4, 1993, plaintiff filed a fourth lawsuit against this defendant in the District Court of Jefferson County.

Defendant claims plaintiff's attorney has been engaged in forum shopping by filing the four lawsuits, has filed frivolous motions to compel, and motions for sanctions, has failed to file a disclosure statement in a timely manner, and, finally, has made frivolous Jones Act seaman's allegations that are totally without merit and designed to avoid defendant's motion for summary judgment.

Also pending is Plaintiff's Motion for Sanctions. Plaintiff claims Defendant should be

sanctioned because it violated the Civil Justice Expense and Delay Reduction Plan's duty to disclose by failing to identify discoverable documents, and, in addition, failed to comply with this court's order compelling production of certain documents. The court will consider both Plaintiff's and Defendant's motions, but for the time being, it will hold all such motions for sanctions in abeyance.