MAIN, Justice.
Austal USA, LLC (“Austal”), filed two petitions for a writ of mandamus directing the Mobile Circuit Court to dismiss certain claims asserted against it by plaintiffs Michael Keshock, Martin Osborn, Richard Fitzgerald, Tyrone Lucas, Riley Bodiford, Tommie Brandon, Justin Reed, and William White (hereinafter referred to collectively as “the plaintiffs”). We deny the petitions.
I. Facts and Procedural History
Austal operates a shipyard in Mobile that builds naval vessels. Each of the plaintiffs is an employee of Austal who claims to have been injured while working in the course of his or her employment. Specifically, each plaintiff claims to have been injured by a tool known as a “Miller saw.”
The plaintiffs filed this action against Austal and three other companies not parties to these petitions.[1] The plaintiffs’ third *977 amendment complaint asserted two counts against Austal. Count I asserted a tort-of-outrage claim against Austal. Austal filed a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss the tort-of-outrage claim. The trial court granted the motion to dismiss count I and entered an order dismissing that claim with prejudice; the tort-of-outrage claim is not now before us.
Count VII of the third amended complaint alleged a claim of “intentional misconduct,” specifically alleging that Austal had “intentionally provided Plaintiffs] with a dangerous and defective Miller saw with the specific intent that it would cause injury to Plaintiffs.” Austal filed a separate Rule 12(b)(6) motion seeking to dismiss count VII. Austal argued that it was immune from the claim asserted in count VII by virtue of the exclusivity provisions of the Longshore & Harbor Workers’ Compensation Act, 33 U.S.C. § 901 et seq. (“the LHWCA”), and the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975. On June 16, 2016, the trial court entered an order denying Austal’s motion to dismiss count VIL On June 27, 2016, Austal moved the trial court to vacate its order or to certify its order for a permissive appeal under Rule 5, Ala. R. App. P. •
On June 28, 2016, the plaintiffs filed a fourth amended complaint. The plaintiffs’ fourth amended complaint restated the count VII “intentional-misconduct” claim and added five more counts, each alleging that Austal intentionally injured them. Count VIII asserted a claim of assault and battery against Austal. Count XII asserted a claim of fraud and alleged that Austal “intentionally made false statements regarding the safety of the Miller Saw” and that those statements were made, “with the conscious and deliberate indent to injure its workmen, including plaintiffs, with the Miller Saw so that it could build its ships without having to incur the costs associated with finding a safer alternative method to perform the work.” Count XIII alleged that Austal fraudulently “suppressed, concealed, hid or withheld important facts from the Plaintiffs regarding the known safety hazards associated with the Miller Saw ... and that Austal knew the tool was unsafe and had made the conscious and deliberate decision to intentionally injure its workmen with the tool so that it could build its ships without having to incur the costs associated with finding a safer alternative method to perform the work.” Count XIV alleged that, after the injured plaintiffs returned to work, Austal “intentionally made false statements regarding the safety of the Miller saw with a conscious and deliberate intent directed to the purpose of inflicting severe emotional distress on the Plaintiffs by inducing them to use the same Miller Saws in their work that had previously caused serious injury to Plaintiffs.” Count XV, a fraudulent-suppression claim, similarly alleged that Aus-tal “intentionally suppressed, concealed, hid or withheld important facts from the Plaintiffs regarding the safety of the Miller saw with a conscious and deliberate intent directed to the purpose of inflicting severe emotional distress on the Plaintiffs by inducing them to use the same Miller Saws in their work that had previously caused serious injury to Plaintiffs.”
On July 18, 2016, Austal moved to dismiss counts VIII, XII, XIII, XIV, and XV of the fourth amended complaint.[2] Again, Austal contended that the claims were *978 barred by the exclusivity provisions of the ■ Alabama Workers’ Compensation Act and/or the LHWCA.
On July 19, 2016, the trial court granted Austal’s motion to certify for permissive appeal the question whether count VII of the third amended complaint stated a claim upon which relief could be granted. On August 2, 2016, Austal filed with this Court a petition for permission to appeal or, in the alternative, for a writ of mandamus (no. 1151138).
On August 30, 2016, the trial court denied Austal’s motion to dismiss counts VIII, XII, XIII, XIV, and' XV, but also certified for immediate appeal the question whether those counts asserted claims upon which relief could be granted. On September 8, 2016, Austal filed with this Court a second petition for permission to appeal or, in the alternative, for a writ of mandamus (no 1151244). This Court consolidated both petitions. We eleóted to treat the two petitions for permissive appeal as petitions for the writ of mandamus and ordered answers and briefs.
II. Standard of Review
«<«‘The writ of mandamus is a drastic and extraordinary writ, to be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala. 1995).’ Ex parte Carter, [807 So.2d 534,] 536 [ (Ala. 2001) ].”
“ ‘Ex parte McWilliams, 812 So.2d 318, 321 (Ala. 2001).
“ ‘ “Subject to certain narrow exceptions ..., we have held that, because an ‘adequate remedy’ exists- by 'way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not renewable by petition for writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala. 2002).’
“Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 965-66 (Ala. 2011).”
Ex parte MERSCORP, Inc., 141 So.3d 984, 990 (Ala. 2013). One of the exceptions to the general rule prohibiting mandamus review of the denial of a motion to dismiss is where the motion to dismiss asserts a defense of immunity based on the exclusivity provisions of the Alabama Workers’ Compensation Act, Ex parte Rock Wool Mfg. Co., 202 So.3d 669, 671-72 (Ala. 2016). See also Ex parte McCartney Constr. Co., 720 So.2d 910 (Ala. 1998).
“ ‘ “In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review ....’” Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 57 (Ala. 2006) (quoting Ex parte Haralson, 853 So.2d 928, 931 (Ala. 2003)).
“‘In Newman v. Savas, 878 So.2d 1147 (Ala. 2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ ‘ “A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.”
“ ‘878 So. 2d at 1148-49.’
*979 “Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala. 2005). We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff. Drummond Co., 937 So.2d at 58.”
Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 21 (Ala. 2007).
III. Analysis
There is no dispute that each of the plaintiffs was engaged in maritime employment sufficient to qualify for coverage under the LHWCA. Austal argues that, because the plaintiffs were injured within the line and scope of their maritime employment, Austal enjoys immunity from tort claims by virtue of the exclusivity provision of the LHWCA.[3] In Rodriguez-Flores v. U.S. Coatings, Inc., 133 So.3d 874 (Ala. 2013), we described the exclusivity provision of the LHWCA:
“Section 904 of the LHWCA provides, in part, that ‘[ejvery employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title’ and that such compensation ‘shall be payable irrespective of fault as a cause for the injury.’ Section 905(a) of the LHWCA provides, in part, that ‘[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee’ and that, in such action, ‘the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee- assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.’ The exclusivity provision of the LHWCA has been explained as follows:
“ ‘The LHWCA, at 33 U.S.O. § 905, precludes a personal injury action against any employer who complies with the LHWCA. Just as Ala. Code 1975, • § 25-5-53, provides that workers’ compensation benefits are the exclusive remedy for injuries received in a work-related accident, the LHWCA provides, in 33 U.S.C. § 905(a), that an injured worker may not maintain a tort action against his employer for any negligence of the employer giving rise to the injury; the injured worker’s exclusive remedy is under the LHWCA. In International Paper Co. v. Murray, 490 So.2d 1234 (Ala. Civ. App.1985), aff'd in part, rev’d in part on other grounds, Ex parte Murray, 490 So.2d 1238 (1986), this court noted:
“‘“The LHWCA was adopted in 1927 as a federal compensation plan for maritime workers, and was patterned after existing state workers’ compensation laws.... The LHWCA is & workmen’s compensation statute similar to our own, where employers have ‘relinquished their defenses to tort áctions in exchange for limited and predictable liability.’ ”
“ ‘490 So.2d at 1236 (quoting Morrison Knudsen Constr. Co. v. Director, Office of Workers’ Compensation Programs, United States Department of Labor, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983)).’
*980 “Jarrell v. Bender Shipbuilding & Repair Co., 681 So.2d 1092, 1094 (Ala. Civ. App. 1996). Thus, employers enjoy immunity from tort claims under the LHWCA as they do under the [Workers’ Compensation] Act.”
Rodriguez-Flores, 133 So.3d at 880-81.
In Rodriguez-Flores, we also recognized that there is an “exceedingly narrow” exception to an employer’s tort immunity under the LHWCA where the employer has committed an intentional tort with the specific intent or desire that the injury occur:
“Some courts have recognized an exception to the exclusivity provision of the LHWCA where the employer has committed an intentional tort. Fisher v. Halliburton, 667 F.3d 602 (5th Cir. 2012). However, these ‘cases take a very narrow view of the types of intentional injury that lie outside of the LHWCA— the cases consistently require that the employer have had a specific intent or desire that the injury occur.’ Id. at 618. See Sample v. Johnson, 771 F.2d 1335, 1346 (9th Cir. 1985); Roy v. Bethlehem Steel Corp., 838 F.Supp. 312, 316 (E.D. Tex. 1993) (‘The employer can be sued under LHWCA, however, if he committed an intentional tort, i.e., genuine, intentional injury.’); Houston v. Bechtel Assocs. Prof'l Corp., D.C., 522 F.Supp. [1094] at 1096 [ (D.D.C. 1981) ] (observing that ‘[t]he courts have ... carved out an exception to exclusive liability provisions where the injury inflicted is the result of an intentional act’); Austin v. Johns-Manville Sales Corp., 508 F.Supp. 313, 316 (D. Me. 1981) (‘Nothing short of a specific intent to injure the employee falls outside the scope of the [LHWCA].’); Sharp v. Elkins, 616 F.Supp. 1561 (W.D. La. 1985); and Rustin v. District of Columbia, 491 A.2d 496, 501 (D.C. 1985) (observing that the exclusivity provision of the LHWCA ‘does not reach actions where the employer specifically intended to injure the employee’).”
133 So.3d at 881-82.
Austal contends that the claims of each of the plaintiffs are barred by the exclusivity provision of the LHWCA. The plaintiffs’ allegations taken as a whole, Austal argues, allege merely that each plaintiff suffered accidental injury when a tool Aus-tal supplied them to perform their work kicked back and contacted them bodies. Thus, Austal argues, the claims of each of the plaintiffs arise from a workplace accident, for which tort liability is barred by the provisions of the LHWCA.
The plaintiffs respond that they have indeed pleaded facts in their complaint and subsequent amendments sufficient to invoke the intent-to-injure exception to LHWCA exclusivity. The plaintiffs have, in fact, expressly alleged that Austal specifically intended to injure them. Count VII alleges that “defendants intentionally provided Plaintiff[s] with a dangerous and defective Miller saw with the specific intent that it would cause injury to Plaintiffs.” [4] (Emphasis added.) Count XII alleges a “deliberate intent to injure its workmen, including plaintiffs.” (Emphasis added.) Count XIII similarly alleges that Austal “made the conscious and deliberate decision to intentionally injure its workmen.” Likewise, each of counts XIV and XV alleges that Austal acted with “a conscious and deliberate intent directed to the purpose of inflicting emotional distress on the Plaintiffs.” (Emphasis added.) Austal, however, dismisses those allegations as conelusory and presented solely for the purpose of invoking the narrow intent-to-injure exception to LHWCA exclusivity. *981 Austal urges this Court to look only to the specific factual allegations pleaded in the plaintiffs’ complaint concerning how the injuries occurred and the alleged business motivations Austal had for requiring the plaintiffs to work with a dangerous tool. Those allegations, Austal contends, describe precisely the type of workplace accidental injuries for which it is immune from tort liability under the LHWCA.
At the motion-to-dismiss stage, however, a court’s ability to pick and choose which allegations of the complaint to accept as true is constrained by Alabama’s broad and well settled standard for the dismissal of claims under Rule 12(b)(6). In this case, there is no question that the plaintiffs have pleaded that Austal “made the conscious and deliberate decision to intentionally injure its workmen.” That allegation—that a company would deliberately injure multiple specific employees— is so shocking that it invites skepticism. Moreover, we agree with Austal that a specific intent or desire to cause injury to its employees is not particularly consistent with the alleged cost-saving motivation for causing such injuries. Nevertheless, our standard of review does not permit this Court to consider the plausibility of the allegations. Rather, in considering whether a complaint is sufficient to withstand a motion to dismiss, we must take the allegations of the complaint as true, Ussery v. Terry, 201 So.3d 544, 546 (Ala. 2016); we do not consider “ ‘whether the pleader will ultimately prevail but whether the pleader may possibly prevail,’ ” Daniel v. Moye, 224 So.3d 115, 127 (Ala. 2016) (quoting Newman v. Savas, 878 So.2d 1147, 1149 (Ala. 2003) (emphasis added)); and “[w]e construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff.” Daniel, 224 So.3d at 127. Furthermore, a Rule 12(b)(6) dismissal is proper “ ‘only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.’ ” Knox v. Western World Ins. Co., 893 So.2d 321, 322 (Ala. 2004) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993)).
In this case, regardless of our view on the likelihood of the plaintiffs’ ultimate ability to establish the truth of the intent-to-injure allegations, or even to survive the summary-judgment stage, we cannot deny that there is at least some possibility that those allegations are true. Accordingly, the plaintiffs are entitled to at least limited discovery on the issue whether their claims are subject to the exclusivity provision of the LHWCA.[5] Thus, Austal has not shown a clear legal right to.a Rule 12(b)(6) dismissal.
IV. Conclusion
Austal has not demonstrated a clear legal right to an order granting its Rule 12(b)(6) motions to dismiss. Therefore, we deny the petitions.
1151138—PETITION DENIED.
1151244—PETITION DENIED.
Stuart, Bolin, Parker, Murdock, Wise, and Bryan, JJ., concur.
Shaw, J., concurs in the result.

. The plaintiffs sued Metabowerke GMBH and Metabo Corporation, foreign corporations alleged to have manufactured the Miller saw, and Southern Gas and Supply, Inc., a company that allegedly played a role in the design and distribution of the saw. The plaintiffs asserted claims of negligence, wantonness, and product liability against those three defendants. The claims against those three *977 defendants are not at issue in Austal’s petitions.

. The fourth amended complaint also restated the previously dismissed tort-of-outrage claim. Austal moved to dismiss that claim on the ground that the trial court had previously dismissed the claim with prejudice. The trial court again entered an order dismissing the tort-of-outrage claim.

. Austal also argues that, to the extent it applies, the Alabama Workers’ Compensation Act bars the plaintiffs’ tort claims. This argument appears tp made out of an abundance of caution, given the possibility of concurrent LHWCA and state-law workers’ compensation benefits. See Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). Nevertheless, based on the briefs before us, it appears that the parties consider this ease to be ultimately governed by the LHWCA. Accordingly, we do not address the applicability of the exclusivity bar of the Alabama Workers’ Compensation Act.

. Whether count VII, which asserts a claim of ‘‘intentional misconduct,” states an independent cognizable claim under Alabama law is not an issue presently before this Court.

. It is not uncommon that some discovery may be necessary to establish an immunity defense. See, e.g., Ex parte Alabama Dep’t of Mental Health & Retardation, 837 So.2d 808, 813-14 (Ala. 2002) (“We agree that a motion to dismiss is typically not the appropriate vehicle by which to assert qualified immunity or State-agent immunity and that normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery.”).