**Connie C. KING, Plaintiff-Appellant,**

v.

**UNIVERSAL ELECTRIC CONSTRUCTION, et al., Defendants-Appellees.**

No. 86–4109
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1986.

C. Brent Coreil, Anthony C. Dupre, Ville Platte, La., for plaintiff-appellant.

Keith M. Borne, Lafayette, La., Allen L. Smith, Jr., Lake Charles, La., for defendants-appellees.

Before GEE, REAVLEY, and JOLLY, Circuit Judges.

PER CURIAM:

The issue for decision is whether the widow of an electrical construction lineman who drowned in a navigable river while preparing to build a line across it has a remedy under the general maritime law for the wrongful death of her husband.

The trial court observed:

On October 28, 1983, the plaintiff's decedent, Brent Wayne King, was employed by Universal Electric Construction Company [hereinafter "Universal"] as a lineman, who had worked for Universal for approximately 3 years in constructing and stringing various electrical lines. On the date of the incident in question, Universal was working pursuant to its contract with the defendant, CLECO to construct particular electrical lines, requiring that lines be run across the Red River in Rapides Parish, Louisiana. In order to run the electrical lines across the Red River, a 14–foot aluminum skiff owned by Universal was delivered to the river where it became equipped with a 20–horsepower Mercury motor. The plaintiff's decedent had never been involved in any previous river crossings during his employment with Universal, and this was the first day he used any boat on the job. Before the skiff was to start running lines across the river, the plaintiff's decedent took it for a "test ride" during which he fell from the boat and drowned in the Red River.

On these facts, which it correctly characterized as undisputed, the trial court concluded that Mr. King was not a Jones Act seaman because he was neither permanently assigned to the skiff nor did he perform a substantial amount of his work aboard it. *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (en banc). Nor, it determined, was he a longshoreman, as he failed the "status" element of the dual situs/status test laid down in *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). These holdings are plainly correct; and if the plaintiff complains of them to us (her brief is ambigu-

ous on the point), we affirm them. The trial court omitted to rule on the plaintiff's general maritime law claim for wrongful death, however, and this is assigned as error. Because the essential facts are settled, it is appropriate for us to apply the law to them and rule on that claim today.

Appellant King contends that *Thibodaux v. Atlantic Richfield Company*, 580 F.2d 841 (5th Cir.1978) controls this case, and indeed it is closely in point. There a similar set of wrongful death claims was advanced by the widow of an oil field maintenance and construction worker, who drowned in a canal when a launch sank, against his "statutory employer."[1] The defendant pleaded the "exclusive remedy" provision of the Louisiana Worker's Compensation Act. We held that the trial court erred in accepting that plea because, when admiralty jurisdiction exists, "an exclusive remedy provision in a state workman's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law." 580 F.2d at 847. Appellee maintains that *Thibodaux* does not control because, in today's case, the action is brought against Mr. King's *actual* employer, rather than against one merely deemed by Louisiana law to stand in his shoes. We discern no substance in this attempted distinction: by Louisiana law, a "statutory employer" is equally as entitled to plead "exclusive remedy" as is an actual one; and, if admiralty jurisdiction exists, such a plea is as equally overridden by federal maritime law in the one instance as in the other. Thus our inquiry comes down to whether Mrs. King has "stated a cause of action within admiralty jurisdiction." 580 F.2d at 846 n. 14. At the note cited, speaking of our earlier decision in *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973), we ob-

served that in that opinion we recognized that locality alone is insufficient for invocation of admiralty jurisdiction. We held that, in addition to satisfying the locality test, the facts and circumstances of the claim must bear a significant relationship to traditional maritime activity. We stated that in determining whether such a significant maritime relationship exists, the court should consider the following: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and type of injury; and traditional concepts of the role of admiralty law. 485 F.2d at 525. We noted that "Admiralty has traditionally been concerned with furnishing remedies for those injured while traveling navigable waters," 580 F.2d at 846.

Resort to the actual opinion in *Kelly* throws further light on the issues before us. In that case, poachers on an island hunting preserve in the Mississippi River, who were fired on and wounded by gamekeepers while fleeing the island in a boat, sued in admiralty for their injuries. Our panel commenced its analysis with a discussion of the (then) recent Supreme Court decision in *Executive Jet Aviation v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), noting that after it was handed down mere maritime situs was no longer sufficient, if ever it had been, to sustain maritime jurisdiction—that to do so the wrong complained of must also bear a significant relationship to traditional maritime activity. 485 F.2d at 524. *Executive Jet* had concerned an aircraft which crashed in navigable waters after its engines consumed a surfeit of seagulls. The Court, addressing the maritime activity requirements for the first time in over fifty years,[2] resurrected the maritime activity prong of the test from the outer darkness into which

---

1. Louisiana law, as *Thibodaux* explains, holds any person who contracts out work which is a regular part of his business responsible for worker's compensation to the employees of his contractor to the same extent as though they were his own. Thus, although Atlantic Richfield was not Mr. Thibodaux's actual employer, for purposes of Louisiana law it was—and was shielded from a negligence action by him under that law by the "exclusive remedy" feature of the Louisiana Compensation Act. 580 F.2d at 845–46.

2. Since *Atlantic Transport Co. v. Imbrovek*, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914), decided at a time when aircraft had barely hatched.

decisions of some lower courts had tended to thrust it. For our part, earlier in the same year we had discerned a want of admiralty jurisdiction over a rear-end collision between automobiles on a floating pontoon serving as the approach to a ferry, expressly resting that decision on the want of a connection with maritime interests or activities and not upon the character of the pontoon as (or as not) an "extension of the land." *Peytavin v. Government Employees Ins. Co.*, 453 F.2d 1121 (5th Cir.1972).[3]

Building on these authorities and others, the *Kelly* court derived its four-factor test which we have quoted above. Applying the first factor, functions and roles of the parties, it noted that the poacher who was running the boat—its "pilot" and "navigator"—was the party most seriously injured by the fire of the gamekeepers. As for the types of vehicles and other instrumentalities involved, one was a boat and the others—firearms—were not so land-bound as to preclude a maritime connection. The cause of injury was those same firearms; and, finally, no distortion of the traditional role of admiralty law was involved in furnishing a remedy to persons injured while traveling navigable waters. Judge Morgan, writing in dissent, agreed with the majority's test but would have declined to find jurisdiction on the ground that the state's interest in controlling such conduct as that of the parties far outweighed any minimal federal concerns implicated by it. In that connection, he correctly observed that the law of admiralty has purely commercial origins and purposes, deriving its force from the strong federal (and, we might add, international) interest in having commerce on navigable waters governed by a uniform body of rules attaching predictable consequences to its unique aspects.

We agree with Judge Morgan; the admiralty has no more interest in controlling the legal consequences ensuing upon Mr. King's drowning death when he fell from a boat than if he had fallen from a dock or a bridge. Mr. King was not a traveler upon navigable waters in any but the most superficial sense: they were an obstacle to him, not a convenience, in his task of stringing electrical lines; and the boat which he was compelled by circumstances to use for the first time in his three year tenure on the job was merely a tool for surmounting the obstacle. Indeed, as to the legal consequences of his unfortunate death, the interests of uniformity run all the other way: we can envision little or no reason why the death benefits accruing to his beneficiaries should be more contingent on fault or in a greater amount than those resulting from the death of a fellow lineman in a fall from a high-line tower—or, for that matter, from a bridge into a non-navigable pond. And from the point of view of the employer, given the random incidence of the attachment of admiralty jurisdiction in such a case, it is about as unpredictable an event as could be imagined, fraught with prospects of unexpected liability against which no provision has likely been made. A test which produces a result such as this seems dubious.

Even so, the test of the *Kelly* court is our test—Judge Morgan was in the minority. One panel of our Court does not overrule another, and we are bound by the rule of the *Kelly* majority. We apply its test: as for the function and role of the parties, Mr. King was the skiff's sole occupant and hence its "pilot," responsible for its "navigation." The vehicle involved—the sole one—was the skiff. The injury was death by drowning, surely a maritime peril; and we see no more violence done to the traditional concepts of the role of admiralty law by according Mr. King's widow an admiralty remedy than was done in granting one to the head poacher, Kelly, or to the widow of Mr. Thibodaux.

As we have intimated, such a result seems to us a doubtful one. We are unable, however, to arrive at any other if we must apply the test stated in *Kelly* and in

---

**3.** In *Peytavin,* we noted a general refusal to extend admiralty jurisdiction to such incidental users of navigable waters as swimmers, persons falling from docks, and the like. 453 F.2d 1126 n. 13.

the manner in which the court applied it there.

REVERSED AND REMANDED.