815 So.2d 963 (2002)
Lola Jones QUINN, et al.
v.
ST. CHARLES GAMING COMPANY, INC., et al.
Nos. 01-0794.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
Writ Denied April 12, 2002.
*964 Steven Broussard, Lake Charles, LA, Counsel for Plaintiffs in Intervention/Appellees Quan Duc Do, Phong Duc Do.
J.B. Jones Jr., The Jones Law Firm, Cameron, LA, Counsel for Plaintiffs/Appellees Lola Jones Quinn, Arnold C. Jones, Sr., Judith Ann Jones, Suetta M. Burney, *965 Arnold C. Jones, Jr., Betty L. Hicks, Eugene P. Jones.
Bruce Victor Schewe, Brian D. Wallace, Maurice Edward Bostick, Evan Thomas Caffrey, Phelps Dunbar, L.L.P., New Orleans, LA, Counsel for Defendant/Appellant St. Charles Gaming Company, Inc.
Andrew Robinson Johnson IV, Plauche, Smith & Nieset, Lake Charles, LA, Counsel for State Farm Mutual Auto Ins. Co., Sam T. Vu, Louisiana Farm Bureau Casualty Ins. Co.
Frederick L. Cappel, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, Counsel for Wally Gollot.
Michael Gerard Lemoine, Breaud & Lemoine, Lafayette, LA, Counsel for Gulf Pride Shrimp Company.
James L. Pate, Laborde & Neuner, Lafayette, LA, Counsel for St. Paul Guardian Ins. Co.
Al M. Thompson Jr., Berrigan, Litchfield, Schonekas & Mann, L.L.C., New Orleans, LA, Counsel for Wally Gollot, Joel Waltman, Lucky Seafood.
James Anthony Blanco, Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P., Lake Charles, LA, Counsel for State Farm Mutual Auto Ins. Co.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The trial court denied a motion for summary judgment filed by the defendant, St. Charles Gaming Company, Inc., d/b/a Isle of Capri CasinoLake Charles, on the issue of whether Louisiana's anti-dram shop statute applies to defeat the claims of the heirs of Ramona Jones, who are represented by Quinn.[1] For the following reasons, St. Charles' application for supervisory writs is denied.

FACTS
On April 30, 2000, Quinn alleges that Ninh V. Do gambled all night on board the M/V Grand Palais and the M/V Crown, which are owned and operated by both St. Charles and Grand Palais Riverboat, Inc. The allegations reveal that he consumed large amounts of alcoholic beverages during the night, which were provided free of charge to gambling patrons by St. Charles. After Do left the casino the next morning, traveling south on Highway 27 south of Holmwood, Quinn claims that his 1997 Honda Passport crossed the center line and collided head-on with a vehicle driven by Jones. Both Do and Jones were killed instantly. Do's blood alcohol level at the time of the accident was .15.
Quinn filed suit against St. Charles, the estate of Do, and various other defendants alleging admiralty jurisdiction and seeking pecuniary and exemplary damages under general maritime law. Do's two children intervened in the suit seeking similar damages from St. Charles and Grand Palais. Thereafter, Quinn added Grand Palais as a defendant, alleging that it shared the fault and liability of St. Charles.
The subject matter of this writ is the trial court's denial of St. Charles' motion for summary judgment seeking to have Quinn's claims dismissed under La.R.S. 9:2800.1(A), Louisiana's anti-dram shop liability statute. St. Charles argues that the trial court erred in finding admiralty jurisdiction and that a federal maritime dram shop cause of action exists.

*966 SUMMARY JUDGMENT
Summary judgments are reviewed de novo. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asked in determining whether summary judgment was appropriate. Id. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits reveal no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

ADMIRALTY JURISDICTION
In order to find that a tort is maritime in nature and within the admiralty jurisdiction, it must satisfy two tests. The first test, location, is satisfied if the tort occurred on navigable waters or if the injury suffered on land was caused by a vessel on navigable waters. Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); 46 U.S.C.App. § 740. The second test, whether the tort bears a significant connection to a traditional maritime activity, consists of two prongs:
A court, first must "assess the general features of the type of incident involved," [Sisson v. Ruby,] 497 U.S., at 363, 110 S.Ct., at 2896, to determine whether the incident has "a potentially disruptive impact on maritime commerce," id., at 364, n. 2, 110 S.Ct., 2896, n. 2. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." Id., at 365, 364, and n. 2, 110 S.Ct., at 2879, 2896, and n. 2.
Id. at 534, 115 S.Ct. at 1048, quoting Sisson v. Ruby, 497 U.S. 358, 363-65, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990).
In this instance, we find that the location test is satisfied because the alleged tort, the death of Jones on land, was caused by a vessel on navigable waters. The provision of excessive amounts of alcohol to Do, without adequate supervision, allegedly occurred on either or both the M/V Grand Palais or the M/V Crown. Both of these gambling casinos are vessels on navigable waters, since, at the time of this incident, they were required by law to conduct gambling operations during excursions onto the Calcasieu River and Lake Charles. La.R.S. 27:65; see also Saucier v. Players Lake Charles, LLC, 99-1196 (La.App. 3 Cir. 12/22/99), 751 So.2d 312. The provision of alcohol to Do was a proximate cause of the collision which resulted in Jones' death. In Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), the Supreme Court refused to restrict its interpretation of the language contained in the Admiralty Extension Act, 46 U.S.C.App. § 740, to require that the injuries actually be caused by the vessel or its appurtenances. In so holding, the Court stated:
Nothing in the legislative history supports so restrictive an interpretation of the statutory language. There is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel while operating it, any more than there is between torts "committed" by a corporation and by its employees. And ships are libeled as readily for an unduly bellicose mate's assault on a crewman, see Boudoin v. Lykes *967 Brothers Steamship Co., 348 U.S. 336, 339-340, 75 S.Ct. 382, 384-385, 99 L.Ed. 354[ (1955)]; The Rolph, 299 F. 52 (C.A.9th Cir.[1924]), or for having an incompetent crew or master, see Keen v. Overseas Tankship Corp., 194 F.2d 515, 517 (C.A.2d Cir.[1952]), as for a collision.
Id. at 210, 83 S.Ct. at 1188. Thus, we find that the location test is satisfied under the facts at issue.
Our next inquiry turns to the two part test enunciated in Sisson, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292. First, we must determine whether the general features of the tort complained of have the potential to disrupt maritime commerce. In Grubart, 513 U.S. at 538-39, 115 S.Ct. at 1051, where damage was caused to a freight tunnel by a barge performing work on the Chicago River, the Court stated:
The first Sisson test turns, then, on a description of the incident at an intermediate level of possible generality. To speak of the incident as "fire" would have been too general to differentiate cases; at the other extreme, to have described the fire as damaging nothing but pleasure boats and their tie-up facilities would have ignored, among other things, the capacity of pleasure boats to endanger commercial shipping that happened nearby. We rejected both extremes and instead asked whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping.
Describing the incident at issue "at an intermediate level of possible generality," we characterize it as the provision of alcohol to passengers on board a vessel without adequate supervision, with the occurrence of damages on land. Id. We further find that the provision of alcohol in this manner could possibly have a disruptive effect on maritime commerce, such as where a large party of passengers become inebriated injuring themselves or other patrons or fall overboard causing a disruption to maritime commerce due to search and rescue operations. This could very well occur if it happened in a busy area such as at the mouth of the Mississippi River, the St. Lawrence Seaway, or the Puget Sound.[2]See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Thus, we find that the first Sisson prong is satisfied.
Turning to the second Sisson prong, the Court, in Grubart, 513 U.S. at 539-40, 115 S.Ct. at 1051, stated:
In the second Sisson enquiry, we look to whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. We ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand. Navigation of boats in navigable waters clearly falls within the substantial relationship, Foremost, 457 U.S., at 675, 102 S.Ct., at 2658-2659; storing them at a marina on navigable waters is close enough, Sisson, supra, 497 U.S., at 367, 110 S.Ct., at 2898; whereas in flying an airplane over the water, Executive Jet [Aviation Inc. v. Cleveland], 409 U.S., [249] at 270-271, 93 S.Ct., [493] at 505-506 [34 L.Ed.2d 454 (1972)], as in swimming, id., 255-256, 93 S.Ct., at 498-499, the relationship is too attenuated.
*968 We have no difficulty in finding that the general character of the activity at issue shows a substantial relationship to a traditional maritime activity. The duties owed by vessel owners to their passengers have long been found a traditional maritime concern. Palmer v. Fayard Moving & Transp. Corp., 930 F.2d 437 (5th Cir.1991); Butler v. American Trawler Co., 887 F.2d 20 (1st Cir.1989); Carey v. Bahama Cruise Lines, 864 F.2d 201 (1st Cir.1988); Duluth Superior Excursions, Inc. v. Makela, 623 F.2d 1251 (8th Cir.1980); Bay Casino, LLC v. M/V Royal Empress, 199 F.R.D. 464 (E.D.N.Y.1999); Young v. Players Lake Charles LLC, 47 F.Supp.2d 832 (S.D.Tex.1999); and Luby v. Carnival Cruise Lines, 633 F.Supp. 40 (S.D.Fla.1986). Accordingly, we find that the trial court correctly held that admiralty jurisdiction applies in this instance.

DRAM SHOP LIABILITY
Our next inquiry turns to whether general maritime law provides Quinn a cause of action for dram shop liability against St. Charles. Louisiana has enacted a policy of anti-dram shop liability pursuant to La.R.S. 9:2800.1, and we realize that it was the intent of the Legislature to provide a limitation of liability to those who serve alcoholic beverages to their customers. Had the provision of alcoholic beverages occurred on land, the defendants would have no liability. However, because we find that admiralty jurisdiction applies in this instance via the Admiralty Extension Act, the application of substantive admiralty law preempts the application of Louisiana law. Grubart, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024. Thus, we must look to admiralty law to determine whether a cause of action exists for dram shop liability in this instance. We find that it does. In a prior case, Saucier, 751 So.2d 312, citing Reyes v. Vantage S.S. Co. Inc., 609 F.2d 140 (5th Cir.1980); Young, 47 F.Supp.2d 832; and Thier v. Lykes Brothers Inc., 900 F.Supp. 864 (S.D.Tex.1995), we acknowledged that general maritime law holds a ship owner or operator liable for providing alcohol without adequate supervision. Accordingly, we find that Quinn has a general maritime law cause of action for dram shop liability against St. Charles for the provision of excessive amounts of alcohol to Do without adequate supervision. See also Duluth Superior Excursions, Inc., 623 F.2d 1251; Bay Casino, 199 F.R.D. 464.
Thus, although we acknowledge Louisiana's policy of anti-dram shop liability, we find that such a cause of action exists under the general maritime law. Finding no error in the trial court's denial of St. Charles' motion for summary judgment, its application for supervisory writs is, hereby, denied.
WRIT DENIED.
NOTES
[1] The plaintiffs, the heirs of Ramona Jones, are Lola Jones Quinn, Arnold C. Jones, Sr., Judith Ann Jones, Suetta M. Burney, Arnold C. Jones, Jr., Betty L. Hicks, and Eugene P. Jones.
[2] Thomas C. Galligan, Jr., Of Incidents, Activities, and Maritime Jurisdiction: A Jurisprudential Exegesis, 56 La. L.Rev. 519 (1996).