# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 06-1242

JESSIE BELL

VERSUS

AMERICAN INTERNATIONAL GROUP, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2001-1993
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Robert W. Hallack
P. O. Box 77258
13007 Justice Avenue
Baton Rouge, LA 70816
(225) 291-4357
Counsel for Plaintiff/Appellant:
    Jessie Bell

S. Brian Perry
Randall K. Theunissen
Allen & Gooch
P. O. Drawer 3768
Lafayette, LA 70502
(337) 291-1000
Counsel for Defendant/Appellee:
    IP Petroleum Co., Inc.

**Edwin G. Preis, Jr.**
**Richard J. Hymel**
**Preis, Kraft & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**Counsel for Defendants/Appellees:**
     **National Union Fire Company of LA**
     **Operators and Consulting Serv., Inc.**

**Elton Duncan, III**
**Duncan, Courington & Rydberg**
**400 Poydras St., #1200**
**New Orleans, LA 70130**
**(504) 524-5566**
**Counsel for Defendant/Appellee:**
     **Mark & Emmett Marine, Inc.**

**Ross David Bruce**
**Agent for Service**
**11864 Hwy 308**
**LaRose, LA 70373**
**Counsel for Defendant/Appellee:**
     **Gulf Tran, Inc.**

GREMILLION, Judge.

The plaintiff, Jessie Bell, appeals the judgment of the trial court sustaining his peremptory exception of prescription. The trial court held that his claims against the defendant, Mark & Emmett Marine, Inc., were prescribed as he failed to assert them within three years of the date of the incident, pursuant to general maritime law. We affirm.

**FACTS**

On May 6, 2000, Bell, an employee of Wireline Specialists of Louisiana, Inc., and three co-workers were transported by the M/V Q.B. to the fixed platform, South Timbalier 211, which was owned by IP Petroleum Company, Inc. Upon reaching the platform, the M/V Q.B. tied off to a buoy so that the Wireline crew and equipment could be off-loaded in a personnel basket via a crane located on the platform. The crane was operated by an employee of Operators & Consulting Services, Inc. During the transfer, the personnel basket was jerked up and spun out of control, hitting equipment located on the deck of the vessel and the vessel's cabin. It jerked up again and then dropped down hitting the deck of the vessel, causing the crew to spill out onto the deck, with one person falling into the water. At the time of the incident, which happened at approximately 4:30 a.m., the seas were running at six to eight feet. As a result of this incident, Bell suffered injuries to his neck and lower back.

Bell filed the instant suit on April 12, 2001, naming IP Petroleum, Operators & Consulting, and American International Group as defendants. On June 18, 2001, Bell amended his petition to name National Union Fire Insurance Company

1

of Louisiana, Operators & Consulting's liability insurer, as a defendant in place of American International. Bell amended his petition again on December 21, 2004, to add as a defendant, Gulf Tran, Inc., who it alleged was the owner of the M/V Q.B. On April 13, 2005, he once again amended his petition and named Mark & Emmett as the owner of the M/V Q.B., in place of Gulf Tran. In answering this petition, Mark & Emmett affirmatively pled, among other defenses, that Bell's claims against it had prescribed. Thereafter, Mark & Emmett filed a peremptory exception of prescription pursuant to the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.A. § 763(a). Following a hearing on the exception, the trial court took the matter under advisement and then rendered a judgment sustaining Mark & Emmett's exception and dismissing Bell's claims with prejudice. This appeal followed.

## ISSUES

On appeal, Bell argues that the trial court abused its discretion by failing to expressly state that there was no just reason to delay the immediate appeal of this judgment pursuant to La.Code Civ.P. art. 1915(B)(1). Next, he argues that the trial court erred in finding that general maritime law applied to the facts of this matter and that his claims against Mark & Emmett were prescribed.

## FINAL JUDGMENT

The trial court rendered judgment in this matter on April 5, 2006. The judgment is titled, "**Final Judgment**," but otherwise does not conform to Article 1915(B). This failure forms the basis of Bell's first assignment of error, as he claims that the trial court abused its discretion by failing to expressly state that there was no just reason to delay an immediate appeal.

2

Louisiana Code of Civil Procedure Article 1915(B) provides:

(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

In this instance, although the trial court's judgment is designated as a final judgment, it contains no express determination that the judgment qualifies for an immediate appeal. In accordance with *R.J. Messinger, Inc. v. Rosenblum*, 04-1664 (La. 3/2/05), 894 So.2d 113, we conducted a de novo review of the record to determine whether the trial court properly designated this appeal as a final judgment. After such review of the record, we find that the trial court was correct in designating its judgment as a final judgment. As it dismisses all of Bell's claims against Mark & Emmett, but has no effect on his claims against the remaining defendants, we find that certification of this judgment as a final judgment was correct and that this appeal is properly before us. Accordingly, we find no merit to this assignment of error.

## STANDARD OF REVIEW

This matter was raised pursuant to a peremptory exception of prescription. Louisiana Civil Code of Procedure Article 931 provides that evidence may be introduced in support of the peremptory exception when the grounds do not

3

appear on the face of the pleadings. If evidence is introduced in support of the exception of prescription, the findings of the trial court are factual in nature and are reviewed on appeal subject to the manifest error—clearly wrong standard of review. *London Towne Condominium Homeowner's Ass'n v. London Towne Co.*, 06-0401 (La. 10/17/06), 939 So.2d 1227.

## GENERAL MARITIME LAW

In his second assignment of error, Bell argues that the trial court erred in finding that general maritime law applied to his claim against Mark & Emmett and that his claim against it had prescribed. He argues that the accident occurred on a fixed platform, thus, under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C § 1331, Louisiana law would apply to interrupt the tolling of prescription on his negligence claim against Mark & Emmett. We disagree.

In *Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665, 668-69 (5th Cir. 2006)(alteration in original), the court stated:

> Three conditions must be met before state law is adopted as surrogate federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with [f]ederal law." *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir.1990). . . .

> Under federal maritime law, "a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued." 46 App. U.S.C. § 763a.

In *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043 (1995), the United States Supreme Court laid out the two-part test utilized to determine whether a tort is maritime in nature and within the admiralty jurisdiction.

4

The first test, location, is satisfied if the tort occurred on navigable waters or if the injury suffered on land was caused by a vessel on navigable waters. The second test, whether the tort bears a significant connection to a traditional maritime activity, consists of two prongs:

> A court, first, must "assess the general features of the type of incident involved," [*Sisson v. Ruby*;] 497 U.S. [ 358,] 363, 110 S.Ct. [2892,] 2896 [1990], to determine whether the incident has "a potentially disruptive impact on maritime commerce," *id.*, at 364 n. 2, 110 S.Ct. 2896, n. 2. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.*, at 365, 364, and n. 2, 110 S.Ct., at 2879, 2896, and n. 2.

*Id.* at 534, 1048 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363-65, 110 S.Ct. 2892, 2896 (1990).

After reviewing the evidence, we find no error in the trial court's factual finding that the alleged negligence occurred on navigable waters. Although Bell argues that he was injured while on the fixed platform, the trial court found otherwise. This finding is reasonable based on the evidence that Bell, although lifted off of the vessel's deck, was injured when he hit equipment on the deck, the cabin, and was thrown onto the vessel's deck. Consequently, he never made it off of the M/V Q.B. and onto the fixed platform. Accordingly, it was reasonable for the trial court to find that Bell's injuries occurred on navigable waters, rather than on a fixed platform. Thus, the location test is satisfied.

As in *Strong*, this matter turns on whether "the allegedly tortious activity is 'so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.'" *Grubart*, 539, 1043.

5

In his original petition, Bell alleged the following:

> At the time Petitioner and other crewmembers were being discharged from the crew boat, the crew boat was being operated in an unsafe and negligent manner, which in turn contributed to the accident. In addition, the crew boat was unseaworthy, or unreasonably fit for its intended service, because it was outfitted with incompetent crew, who were unable to operate the boat in a safe manner during the discharge of personnel.

In his April 13, 2005 fourth supplemental and amending petition (incorrectly titled "THIRD SUPPLEMENTAL AND AMENDING PETITION FOR DAMAGES), Bell added Mark & Emmett as a defendant in his suit. Here, in addition to reurging all of the allegations from his previous petitions, Bell alleged:

> . . . In addition, the vessel, "M/V Q.B." was owned and operated by defendant, MARK & EMMETT MARINE, INC., and her pilot and/or captain was employed by defendant, MARK & EMMETT MARINE, INC.; therefore, MARK & EMMETT MARINE, INC., is liable for all acts of negligence committed in operation of the vessel as well as for any unseaworthy condition of the vessel, "M/V Q.B.."

He further alleged that Mark & Emmett was negligent in the following manners:

> B. MARK & EMMETT MARINE, INC.
>   1. Failing to maintain control of the vessel, "M/V Q.B." during personnel offloading;
>   2. Failing to secure the vessel, "M/V Q.B." prior to offloading personnel; and
>   3. Any other act or omission which may be learned through discovery which constitutes fault under the laws of the State of Louisiana and/or the general maritime law."

General maritime law is settled that a shipowner owes the duty of exercising reasonable care towards persons lawfully aboard its vessel, who are not members of the crew. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406 (1959); *Quinn v. St. Charles Gaming Co., Inc.*, 01-794 (La.App. 3 Cir. 2/6/02), 815 So.2d 963. Included in this duty is the provision of a safe manner

6

of ingress and egress. *Lopez v. Marine Drilling Co.*, 02-1223 (La.App. 3 Cir. 10/22/03), 859 So.2d 850, *writ denied*, 04-95 (La. 3/19/04), 869 So.2d 856. As Bell's allegations pertain to traditional maritime torts, we find that general maritime law applies of its own force. Accordingly, the trial court did not err in finding that general maritime law preempted the application of the OCSLA and through it, Louisiana law.

Finding no error in the trial court's application of general maritime law, we further find no error in the its judgment finding that Bell's claims against Mark & Emmett were prescribed pursuant to the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.A. § 763(a).

## CONCLUSION

Based on the foregoing findings, the judgment of the trial court sustaining the peremptory exception of prescription in favor of the defendant-appellee, Mark & Emmett Marine, Inc., is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Jessie Bell.

**AFFIRMED.**