# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

**12-441**

**ERIN L. RICHARD, ET AL.**

**VERSUS**

**APACHE CORPORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*
**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF LAFAYETTE, DOCKET NO. 2011-234**
**HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE**
\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Judges Sylvia R. Cooks, Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion.

**REVERSED AND REMANDED. Pickett, J., dissents and assigns written reasons. Gremillion, J., dissents for the reasons assigned by Judge Pickett.**

Lawrence N. Curtis
Lawrence N. Curtis, LTD. APLC
P.O. Box 80247
Lafayette, LA 70598-0247
(337) 235-1825

Louis R. Koerner, Jr.
Koerner Law Firm
P.O. Box 4297
Houma, LA 70361-4297
(985) 580-0350
ATTORNEYS FOR PLAINTIFF/APPELLANT
Erin L. Richard, As Natural Tutrix of Her Minor Child Emma G. Richard

David K. Johnson
P.O. Box 98001
Baton Rouge, LA  70898-8001
(225) 231-0755
ATTORNEY FOR DEFENDANT/APPELLEE
Island Operating Company, Inc.

Douglas C. Longman, Jr.
Carmen M. Rodriguez
Jones, Walker, Waechter, Poitevent, Carrere and Denegre
P.O. Box 3408
Lafayette, LA  70502-3408
(337) 593-7600
ATTORNEYS FOR DEFENDANT/APPELLEE
Apache Corporation

**Cooks, Judge.**

## FACTS AND PROCEDURAL HISTORY

Frank Richard (Richard) was working on a fixed platform off the shore of Cameron Parish, Louisiana located within state territorial waters. The platform, identified as East Cameron 2 (EC-2), is owned by Apache Corporation (Apache) and is used for the production of crude oil, natural gas and natural gas liquids. Island Operating Company, Inc. (Island Operating), under a Master Service Contract, is responsible for providing personnel to operate EC-2. Richard was employed by Island Operating.

On January 13, 2010, the three-man crew on EC-2 felt the platform shaking and making rumbling noises. Upon exiting their living quarters they discovered the platform was engulfed in flames. The three employees, including Richard, had no choice but to jump into the cold winter waters of the Gulf of Mexico and swim away from the platform. The life raft on the platform was inaccessible to the three men. No boat was in attendance at the platform or nearby. The Marine Vessel International General (M/V Int'l General) was time chartered by Apache "to standby in the field and transport persons, equipment and material to and from, among other places, Apache's East Cameron 2 Platform."

At the time of the fire on EC-2, the M/V Int'l General was located at another platform identified as West Cameron 66 R. Personnel on another platform, West Cameron 71 D, called the captain of the M/V Int'l General and advised him to proceed immediately to EC-2 as they believed there were personnel in the water in need of rescue. The vessel headed for EC-2. When he came within a three-mile range the captain of the M/V Int'l General could see the fire on EC-2. Richard and his two companions were not rescued from the Gulf waters for over two hours more than two miles away from the platform. The M/V Miss Dawnee (Miss

Dawnee), a second smaller vessel, responded to the emergency call for rescue of the men in the water as did several other vessels. When Miss Dawnee arrived at the platform Captain Dowd, aboard the Miss Dawnee, allegedly observed the life raft tied to the platform with no one in the raft. He allegedly immediately began a search for the three men, whom he knew, and located them still together in the cold gulf waters miles away from the platform. He allegedly pulled Mr. Stone and Mr. Portie out of the water onto his boat. Plaintiff alleges Richard was the last one to be removed from the water still breathing and moaning. Captain Dowd and his crew tried to transfer Richard to the larger vessel, M/V Int'l General, but Richard allegedly appeared to "let go." He was again pulled from the cold waters. As he was pulled onto the M/V Int'l General, Richard allegedly had a faint pulse and was unconscious. The crew on the M/V Int'l General allegedly removed Richard's cold, wet clothing and began to administer CPR as he had stopped breathing. Erin L. Richard, confirmed natural tutrix of Richard's minor child Emma G. Richard, alleged in her petition that Richard died aboard the M/V Int'l General. The Miss Dawnee arrived onshore at the landside dock at 0321 hours with Stone and Portie on board. The M/V Int'l General arrived thirty minutes later with Richard on board allegedly already deceased. He was taken to a local hospital and was pronounced dead.

Plaintiffs sued a number of Defendants including Apache as owner of the platform; Island Operating as Richard's employer; and International Marine, LLC as owner of the M/V Int'l General. Apache filed an exception of no cause of action and a motion for summary judgment. Island Operating filed an exception of no right of action/no cause of action. The trial court granted Apache's motion for summary judgment and granted Island Operating's exception of no right or cause of action dismissing all claims against both parties with prejudice. All claims

2

against the other named defendants are pending and are not the subject of this appeal. The judgment was designated as a final appealable judgment under the provisions of La.Code Civ. P. art. 1914(A). Plaintiff Erin L. Richard appeals alleging several assignments of error asserting the trial court erred as a matter of law by (1) applying Louisiana Workers' Compensation law as the exclusive remedy for Plaintiffs' claims, (2) failing to apply maritime law to Plaintiff's wrongful death claim, and (3) failing to apply the choice of law contract provision in the Apache and Island Operating's Master Service Agreement. Plaintiff also asserts the trial court erred in its factual determination by failing to find there was sufficient impact on maritime commerce so as to invoke maritime jurisdiction.

## LAW AND ANALYSIS

The standard of review for both the motion for summary judgment and the exception of no right of action/no cause of action is *de novo*. *See Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191, (motion for summary judgment); and *Everything on Wheels, Subaru Inc. v. Subaru S., Inc.*, 616 So.2d 1234 (La.1993), (exception of no cause of action/no right of action). Louisiana Code of Civil Procedure Article 931 provides in pertinent part: "No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." Further, La.Code Civ. P. art. 934 provides:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

For purpose of the exceptions of no right of action and no cause of action the well-pleaded facts of Plaintiffs' petition must be taken as true. Among the numerous facts alleged in Plaintiffs' comprehensive petition are several which are

3

particularly pertinent to our *de novo* review. Plaintiffs allege through no fault or negligence on the part of Richard, he was forced to jump from the burning offshore platform on which he was employed into the cold navigable waters of the Gulf of Mexico, within the state territorial limits of Louisiana. Plaintiffs further allege Richard suffered no injuries on the drilling platform, and the injuries which resulted in his death occurred solely in the navigable waters of the Gulf of Mexico. Richard's injury, hypothermia, allegedly occurred over two miles away from the platform as a result of his prolonged exposure to the cold winter waters of the gulf awaiting rescue and/or as a result of negligence on the part of the captain and crew of the M/V Int'l General during the rescue operation. Plaintiffs allege Richard died as a result of Apache, Island Operating, and International Marine's negligence related to the rescue operation as well as additional allegations of fault. Additionally, Plaintiffs allege:

> That, the tragic, untimely, and unnecessary death of the late Frank A. Richard, was caused wholly and solely by reason of the legal fault, negligence, carelessness and omission of duty on the part of these Defendants [including Apache, Island Operating and International Marine] either acting alone, or in concert, without any legal fault, negligence, carelessness, or omission of duty on the part of the late Frank A. Richard, causing or in any way contributing thereto.

Plaintiffs also allege that the incident which gave rise to Richard's injuries suffered in navigable waters "had the potential to disrupt and, in fact, did disrupt maritime commerce" and "shows a substantial relationship to traditional maritime activity." Further, Plaintiffs allege Apache, Island Operating, and International Marine were at fault for Richard's injuries in failing to provide a safe rescue from the gulf waters. Plaintiffs' petition contains numerous other allegations of fault and negligence but they are not relevant to our disposition of this appeal. The trial court granted the motion for summary judgment and the exceptions based solely on its finding that as a matter of law Louisiana Workers' Compensation law provides

the exclusive remedy to Plaintiffs because this accident occurred in Louisiana state territorial waters on a fixed platform. We disagree. Under the facts of this case the trial court erred as a matter of law. Additionally, summary judgment was inappropriate as there remain many genuine issues of material fact in dispute.

In *Quinn v. St. Charles Gaming Company, Inc.*, 01-794, pp.2-3 (La.App. 3 Cir. 2/06/02), 815 So.2d 963, 966, *writ denied* 02-694 (La. 4/12/02), 813 So.2d 412, we explained the tests employed to determine the applicability of admiralty jurisdiction:

> In order to find that a tort is maritime in nature and within the admiralty jurisdiction, it must satisfy two tests. The first test, location, is satisfied if the tort occurred on navigable waters or if the injury suffered on land was caused by a vessel on navigable waters. *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1955); 46 U.S.C.App. §740. The second test, whether the tort bears a significant connection to a traditional maritime activity, consists of two prongs:
>
> A court, first must "assess the general features of the type of incident involved," [*Sisson v. Ruby*] 497 U.S., 358 at 363, 110 S.Ct. 2892, at 2896 (1990) to determine whether the incident has "a potentially disruptive impact on maritime commerce," [*Id.*], at 364, n. 2, 110 S.Ct., 2896, n. 2. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.*, at 365, 364, and n. 2, 110 S.Ct., at 2879, 2896, and n. 2.
>
> *Id*. at 534, 115 S.Ct. at 1048, quoting *Sisson v. Ruby*, 497 U.S. 358, 363-65, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990).

Determining whether maritime jurisdiction exists in any tort case seeking to recover under the laws of admiralty does not turn upon the "status" of the injured employee. This notion was expressly rejected by the United States Supreme Court in its holding in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485 (1986).

In *Offshore Logistics, Inc.* the defendants argued that because the decedents were "platform workers being transported from work to the mainland," *Id*. at 218,

the Outer Continental Shelf Lands Act (OCSLA) would govern their cause of action. (The decedents died in a helicopter crash miles away from the platform.) The defendants relied on the decisions in *Rodrigue v. Aetna Casulty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, (1969) and *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, (1981) asserting:

> [T]he Court recognized the applicability of state law through OCSLA to accidents that resulted in deaths or injuries not on platforms, but on boats in the waters immediately adjacent to the platforms. This, they state, evidences the Court's assumption that OCSLA applies to traditionally maritime locales on the high seas, beyond the confines of the platform, when the decedent is a platform worker. In support of their apparent assumption that it is the decedent's status as a platform worker that controls, they note that it was the "special relationship between the men working on these artificial islands and the adjacent shore to which they commute to visit their families" that moved Congress to treat drilling platforms as upland federal enclaves rather than vessels. *Rodrigue v. Aetna Casualty Co.*, 395 U.S., at 365, 89 S.Ct., at 1842.

*Offshore Logistics*, 477 U.S. at 218.

*In rejecting this "employee status" umbilical chord argument*, the United States Supreme Court stated in clear language:

> **The character of the decedents as platform workers who have a special relationship with the shore community simply has no special relevance to the resolution of the question of the application of OCSLA to this case.** Neither of the cases cited by respondents supports their position. *Rodrigue* and *Gulf Offshore* did not endorse the proposition that it is the decedent's status or his special relationship with the shore that required the application of OCSLA, regardless of the location of the accident. . . . Moreover, the facts of these cases make clear that OCSLA was presumed applicable not because of the status of the decedents but because of the proximity of the workers' accidents to the platforms and the fact that the fatalities were intimately connected with the decedents' work on the platforms.
>
> We do not interpret §4 of OCSLA, 43 U.S.C. §1333, to require or permit us to extend the coverage of the statute to the platform workers in this case who were killed miles away from the platform and on the high seas simply because they were platform workers.

*Offshore Logistics* 477 U.S. at 219 (emphasis added).

Likewise in the case at bar, the decedent died miles away from the platform as the result of injuries sustained solely while in the cold gulf waters. He did not die as a result of any injuries sustained on the platform or in its immediate vicinity. The United States Supreme Court explained further in *Offshore Logistics, Inc.* that [e]ven without" the statutory provisions of DOHSA providing admiralty jurisdiction in the matter, "admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 95 S.Ct. 493, 34 L.Ed.2d 454 (1972)." *Id.* The United States Supreme Court added, "Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an 'island' albeit an artificial one, to the shore." *Id*. In the present case, the decedent died during the course of a maritime rescue operation. The petition alleges actions against a commercial marine vessel who took him on board during the rescue operation, a traditionally maritime activity, as well as actions against his employer, statutory employer, and various other defendants. In *Jerome B. Grubart. Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043 (1995) (emphasis added), the United States Supreme Court expressly held that as long "as **one of the putative tortfeasors was engaged in traditional maritime activity[,]" all tortfeasors fall under the admiralty jurisdiction**. In *Grubart*, the Supreme Court rejected the city's argument that there was no admiralty jurisdiction in the case because the proximate cause of the home owner flood victims' injuries was the city's failure to properly maintain the tunnel which collapsed when the

7

dredging company was driving pilings near it. In response to that argument the United States Supreme Court held:

> [W]e made it clear that **we need to look only to whether one of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor: as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will "involve" such traditional maritime activity and will meet the second nexus prong.** Thus, even if we were to identify the "activity giving rise to the incident" as including the acts of the [C]ity [land-based] as well as Great Lakes [on navigable waters], admiralty jurisdiction would nevertheless attach. That result would be true to *Sisson's* requirement of a "substantial relationship" between the "activity giving rise to the incident" and traditional maritime activity. *Sisson* did not require, as the [C]ity in effect asserts, that there be a complete identity between the two. *The substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity* and such activity is claimed to have been a proximate cause of the incident."

*Grubart* at 541(emphasis added).

That is precisely what we have in this case. In the present case, an explosion and fire erupted on the fixed platform, considered a land-based location, and this occurrence caused the decedent to jump into the navigable gulf waters and go a very long distance, some two miles, away from the platform. Plaintiff clearly alleges that one cause of Richard's death, which occurred in navigable waters, originated during a wholly maritime activity, a marine rescue operation, and allegedly included the negligence of the marine vessel attempting to rescue him in that maritime operation. Richard's presence in the cold waters of the Gulf of Mexico was independent of his work on a fixed platform. His "status" as a platform worker, however, is not irrevocable for all times and for all reasons. Richard, though still a statutory employee of Apache, was not injured while "working" aboard the fixed platform. He died as a result of hypothermia suffered

because he was forced to jump into the waters of the gulf to avoid being burned to death.

In *Offshore Logistics*, *Inc*. the defendants also asserted that the provisions of §7 of DOHSA show a Congressional intent to ensure the application of state wrongful death statutes solely to deaths on the high seas. In rejecting that assertion, the United States Supreme Court explained that "§7 was intended only to serve as a jurisdictional saving clause, **ensuring that state courts enjoyed the right to entertain causes of action and provide wrongful death remedies both for accidents arising on territorial waters** and, under DOHSA, for accidents occurring more than one marine league from shore." *Offshore Logistics, Inc.* at 221(emphasis added).

The United States Supreme Court has long wrangled with determining when admiralty jurisdiction attaches and whether state laws and/or admiralty laws apply exclusively or concurrently. Resolving an age-old gap in the admiralty law, the United States Supreme Court in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772 (1970) and the U.S. Fifth Circuit in *Thibodaux v. Atlantic Richfield Co*., 580 F.2d 841 (5th Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, (1979), held that an action in admiralty exists for wrongful death for torts occurring within state territorial waters. *See also Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, (1974). Relying on the U.S. Supreme Court's holding in *Moragne*, the federal courts have expressly held that "the exclusive remedy provision of the Louisiana Worker's Compensation Act," *Thibodaux*, 580 F.2d at 847, does not preclude a plaintiff from pursuing a claim for wrongful death occasioned in state territorial waters. In *Thibodaux* the U.S. Fifth Circuit addressed the question of the exclusivity of the Louisiana Workers' Compensation

9

Act in a wrongful death action in admiralty for an incident which occurred in state territorial waters involving the death of a non-seaman. In *Thibodaux*, the decedent, an oil field construction and maintenance worker, drowned in a navigable canal in Louisiana as a result of a collision involving the vessel transporting him to work. His widow's suit was dismissed on summary judgment based on the trial court's finding that the Louisiana Workers' Compensation Act provided the exclusive remedy. In a thorough treatment of the federal jurisprudence, the U.S. Fifth Circuit in *Thibodaux* reversed the lower court citing *Moragne* and its progeny:

> *Moragne* dictates that "(t)here is now a cause of action for wrongful death in admiralty that is not dependent on adjacent state laws." *Hornsby v. Fish Meal Co.*, 431 F.2d 865, 867 (5th Cir. 1970). Our holding is limited. We deal only with the exclusive remedy provision of the Louisiana Workmen's Compensation Act as it may affect a remedy afforded by federal maritime law.
>
> ARCO contends that if we permit the plaintiffs to proceed under general maritime tort law we will necessarily afford greater rights than would be afforded under state law merely because the deceased met his death upon navigable waters. We cannot agree. The plaintiffs are permitted to go forward with their lawsuit not merely because the deceased was killed upon navigable waters, but because the facts surrounding the occurrence display a sufficient relationship to traditional maritime activity, and because the Supreme Court in *Moragne* saw fit to provide a federal maritime remedy for wrongful death occurring upon state territorial waters regardless of the rights which might be afforded to the plaintiff under state law.

*Thibodaux*, 580 F.2d at 847.

A later U.S. Fifth Circuit case strengthened the holding in *Thibodaux* declaring whether a defendant in a maritime tort suit is the plaintiff's "statutory employer" or his "actual employer," federal admiralty law overrides the exclusive remedy provision of the Louisiana Workers' Compensation Act. *See King v. Universal Elec. Constr.*, 799 F.2d 1073, 1074 (5th Cir. 1986).

We note further, the U.S. Fifth Circuit Court of Appeal in *Green v. Vermilion Corp.*, 144 F.3d 332 (5th Cir. 1998), *cert. denied,* 526 U.S. 1017, 119

S.Ct. 1251, (1999), was faced with determining whether admiralty jurisdiction applied to the case, and whether Louisiana Workers' Compensation Law provided the exclusive remedy to the injured employee. In *Green*, the plaintiff was employed by Vermilion Corporation as a land-based employee at its land-based fishing camp. Mr. Green was asked to help moor a vessel delivering goods to the camp and help unload the goods. He was injured while on board the docked vessel and alleged an unkept deck as the cause of his injury. The court found there was admiralty jurisdiction because the tort occurred on a maritime locality, the deck of a marine vessel on navigable water, and because the circumstances bore a significant relationship to a traditional maritime activity.

The defendant asserted Green's exclusive remedy, as a land-based employee, was workers' compensation. The U.S. Fifth Circuit, relying on U.S. Supreme Court precedents as well as their own prior decisions, rejected defendant's assertion. Relying on the U.S. Supreme Court's decision in *Moragne*, and the U.S. Fifth Circuit's decisions in *Thibodaux* and *King*, the court held "the exclusive remedy provision of the Louisiana Workers' Compensation Act does not preclude Mr. Green from asserting his claim for unseaworthiness." *Green*, 144 F.3d at 337. Likewise, the court held Mr. Green could also assert his general maritime negligence claim against Vermilion, his employer, "despite the exclusivity provision of the Louisiana Workers' Compensation Act," *Id*. at 338-39. The court reasoned as follows:

> Though *Thibodaux* and *King* involved wrongful death claims, their holdings were based on the Supreme Court's pronouncement that "'[w]hile states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of this Court.'"

*Id*. at 337(*quoting Thibodaux*).

In further refuting defendant's argument in *Green*, the Fifth Circuit additionally held:

> Though Green is entitled to seek relief under the Louisiana Workers' Compensation Act, that option is not exclusive. *See Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 722, 100 S.Ct. 2432,2437-38, 65 L.Ed2d 458 (1980) (finding concurrent federal and state jurisdiction for maritime employees covered by both the LHWCA and a state workers' compensation scheme.) The 1972 Amendments to the LHWCA, "which Congress enacted to abolish the *Sieracki* remedy, [do] not apply to maritime workers who are not within the coverage of the LHWCA." *Aparicio*, 643 F.2d 1109,1116 (5th Cir. 1981). *Where the LHWCA does not apply,* we refuse to expose maritime workers to the variegated state workers' compensation schemes, especially where Congress has expressly found that "most State Workmen's Compensation laws provide benefits which are inadequate." H.R. Doc. 92-1441, 92th Cong., 2nd Sess. 1972 U.S.C.C.A.N. 4698, 4707; *see also Sun Ship*, 447 U.S. at 723 n. 5, 100 S.Ct. at 2438 n.5. Green may pursue his *Sieracki* claim against Vermilion despite the availability of relief under the Louisiana Workers' Compensation Act.

*Id.* at 337-38(emphasis added).

In *Grubart,* the United States Supreme Court set forth what a party seeking to invoke admiralty jurisdiction must satisfy. First, he must satisfy the location test, i.e. did the tort occur on navigable water? Second, he must satisfy a two pronged test of connectivity to maritime activity: 1) Did the incident have a potentially disruptive effect on maritime commerce; and, if so, 2) Did the character of the activity giving rise to Richard's injuries have a substantial relationship to traditional maritime activity? *See Grubart*, 513 U.S. at 533-34, and cases cited therein.

Richard's injuries and subsequent death meet all of the tests employed to determine admiralty jurisdiction. His injuries and death allegedly occurred as a result of his exposure the cold navigable winter waters of the Gulf of Mexico. The petition also alleges that Richard's death may have been, at least in part, due to something that occurred on the M/V Int'l during the rescue operation on navigable

waters and/or as a result of Apache and Island Operating's negligence with regard to the rescue operation in the Gulf of Mexico. The location test is fully satisfied. Likewise, the tort "shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 539. Rescuing a person by marine vessels from the navigable waters of the Gulf of Mexico is a traditional maritime activity. *See Trahan v. Gulf Crews, Inc.*, 255 So.2d 63 (La.1971), and cases cited therein. In assessing the general characteristics of a marine rescue operation it is easy to conclude that such operations always have "a potentially disruptive impact on maritime commerce[.]" *Quinn*, 815 So.2d at 966 (quoting *Grubart quoting Sisson.*) This rescue operation of three men floating in the cold winter waters in the Gulf of Mexico involved at least two, and perhaps as many as seven commercial marine vessels, and the coast guard.

In *Quinn*, the plaintiff alleged that two casino gaming boats served alcohol to Ninh V. Do (Do) who, after leaving the ships in a very inebriated condition, was involved in a head-on collision with the vehicle in which Quinn was a passenger, killing Do and the driver of Quinn's vehicle, and injuring Quinn. This court found the location test was satisfied as the alcohol was served to Do aboard two marine vessels, the casino boats. We also found that the activity in *Quinn* had the potential to disrupt maritime commerce. Inebriated passengers have the potential to "fall overboard causing a disruption to maritime commerce *due to search and rescue operations.*" *Quinn*, 815 So.2d at 967 (emphasis added). We also found the activity in *Quinn* was of a general character which bears a substantial relationship to traditional maritime activities, i.e. "[t]he duties owed by vessel owners to their passengers have long been found a traditional maritime concern." *Id.* at 968, and cases cited therein.

As in *Thibodaux*, not only did Richard meet his death in navigable waters,

13

he allegedly died as a result of being too long in navigable waters while a marine search and rescue operation was underway to pluck him from the cold winter waters of the Gulf of Mexico. Rescue operations by marine vessels of persons adrift on the open waters unquestionably involve "traditional maritime activity." *Id.* at 968. Defendants have done an artful job of trying to divert this court's attention to the "status" of the defendant as a fixed-platform-worker. They have also focused this court's attention on a number of cases dealing with accidents in close proximity to the fixed offshore platform which have no application to accidents occurring miles away from the platform. They have not cited a single case in which the worker has been injured in the water miles away from the platform either in the air, in a boat, or swimming. The reason for this failure is because the United States Supreme Court has said these events fall squarely within general maritime law/admiralty jurisdiction. There is no, and there never has been, a shore-to-the-platform state exclusivity remedy rule in this country and we will not create one.

The trial court clearly erred as a matter of law in holding Defendant was entitled to summary judgment and in granting the Defendants' peremptory exception on the basis that Louisiana Workers' Compensation law affords the exclusive remedy to Plaintiff. Defendants' "fault, negligence, carelessness and omission of duty" in the rescue operation, a traditional maritime activity, affecting workers on the platform is the critical question here. Plaintiffs' petition more than adequately states a cause of action and a right of action against the Defendants sounding in admiralty. Plaintiffs are entitled to proceed against these Defendants under the laws of admiralty. The judgment of the trial court is reversed, and the case is remanded for further proceedings.

**REVERSED AND REMANDED.**

14

ERIN L. RICHARD, ET AL.

VERSUS

APACHE CONSTRUCTION, ET AL.


**PICKETT, J., dissenting.**

The undisputed facts before us show that Frank Richard was an employee of Island Operating Company, Inc., who had a contract to provide personnel to operate a fixed production platform in state territorial waters owned by Apache Corporation. Thus, Richard's recovery from Island Operating and Apache is limited to workers' compensation benefits for injuries sustained on the platform. *See Herb's Welding v. Gray*, 470 U.S. 414, 105 S.Ct. 1421 (1985) *and Suire v. William G. Helis Company, LLC*, 05-1042 (La. App. 11/29/2005), 915 So.2d 351. Richard's widow filed suit in district court against Island Operating and Apache, alleging that because his injuries were sustained in the waters of the Gulf of Mexico, he is entitled to recover from his employer in maritime law. The majority finds that the trial court erred as a matter of law in dismissing Richard's claims against Island Operating and Apache. I respectfully dissent.

The first prong of the test enunciated by the United States Supreme Court in *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043 (1955), relates to the location of the tort. The undisputed facts here demonstrate that the tort alleged against Island Operating and Apache occurred on the fixed platform, which is not considered maritime activity. As the first part of this test is not

satisfied, I find it unnecessary to reach the second prong of the *Grubart* inquiry. I would affirm the judgment of the trial court and dismiss the claims against Island Operating and Apache, as they are properly dealt with in workers' compensation.